# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-4198/06-1895

_____

Olivia Chebet Kipkemboi, et al.,      *
       *
       Petitioners,      *
       *   Petitions for Review from the Board
     v.      *   of Immigration Appeals.
       *
Alberto Gonzales, Attorney General      *
of the United States,      *   [UNPUBLISHED]
       *
       Respondent.      *

_____

Submitted: January 12, 2007
Filed: January 23, 2007

_____

Before COLLOTON, BRIGHT, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Olivia Kipkemboi petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her claim for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). She also seeks review of the BIA's denial of her motion to reopen the administrative proceedings. Her husband, Wilfred Kipkemboi Sugut, sought asylum based on his wife's claim, and he also petitions for review of the agency's decisions. The petitioners are citizens of Kenya who entered the United States in 1999, and they have two young children, both of whom are citizens of the United States.

Before the agency, Kipkemboi argued, among other things, that she had a well founded fear that upon removal to her native Kenya, she would be subjected to female genital mutilation ("FGM"). She contended that FGM is widespread in the Rift Valley area of Kenya where she and her husband were raised and married, and that the government of Kenya is unable or unwilling to control the practice. Kipkemboi also argued that her daughter would be subjected to FGM, and that the emotional trauma associated with witnessing the pain and suffering of the child would constitute persecution of Kipkemboi.

Kipkemboi testified before the immigration court that although her husband does not approve of FGM, her husband's family opposed his marriage to her because she had not been circumcised. She averred that her husband's family still wants her to undergo FGM, and that she also fears that her young daughter would be subjected to the procedure. Kipkemboi testified that she fears returning to Kenya, because although she would live in Nairobi, which is a five-hour drive from the Rift Valley, she would not be safe from her husband's family. Kipkemboi also introduced the State Department's country report on Kenya from 2003, which reported that FGM is still significantly practiced in the country, despite laws against it, and which recounted the story of a 28 year-old woman who was seized by her in-laws and forcibly subjected to FGM.

The immigration judge noted the decision of the BIA in *In re Kasinga*, 21 I&N Dec. 357 (BIA 1996), which held that female genital mutilation may, under certain circumstances, constitute persecution based on membership in a "particular social group," *see* 8 U.S.C. § 1101(a)(42)(A), such that a well-founded fear of the practice could qualify an individual for a grant of asylum. The immigration court harbored "no doubt that FGM is a significant violation of human rights," but found not credible the testimony of the male petitioner that members of his family had traveled three times to Nairobi in 1999 for the purpose of seizing Kipkemboi and subjecting her to FGM. In stating his ultimate conclusion concerning Kipkemboi's eligibility for

asylum, the immigration judge opined that "[s]imply put, the Court does not believe that the evidence in this case indicates that there is a *significant likelihood* that the female respondent or any child of both respondents would face FGM upon returning to Kenya." (Addendum at 81; emphasis added). For similar reasons, the immigration judge concluded that petitioners were not eligible for withholding of removal or relief under the CAT. The BIA affirmed without opinion, and later denied a motion to reopen the proceedings.

We conclude that this case must be remanded to the agency for further consideration, because we cannot determine that the immigration judge applied the correct legal standard in rejecting Kipkemboi's claim for asylum. The Supreme Court has explained that a fear of persecution may be "well-founded" even where there is less than a 50% chance that the act of persecution will take place, and the Court endorsed the view of a commentator that a well-founded fear of persecution would exist where every tenth adult male person in an applicant's country of origin is either put to death or sent to some remote labor camp. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). While the immigration judge appeared to acknowledge this framework at an early stage of his opinion, the critical conclusion of the opinion's analysis section applied a standard requiring a "significant likelihood" of persecution. The phrase "significant likelihood" has no universal definition, but it has been equated with "more likely than not" by adjudicators in the immigration context and elsewhere. *E.g.*, *Tagaga v. INS*, 228 F.3d 1030, 1034 (9th Cir. 2000) (holding that petitioner met the higher standard for withholding of deportation where he established a "substantial likelihood" that he would be tried for treason if removed to country of origin); *Rogers v. Okin*, 634 F.2d 650, 654 n.3 (1st Cir. 1980) (observing that "[t]he exact meaning of the term 'substantial likelihood' is unclear on its face," and then agreeing with suggestion of the district court and the parties that it should be construed to mean "more likely than not"), *vacated and remanded on other grounds sub nom. Mills v. Rogers*, 457 U.S. 291 (1982); *cf. Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978) (equating "substantial likelihood" with "likely");

*G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 955 (5th Cir. 1981) (characterizing "substantial likelihood" as a standard of proof higher than "reasonable likelihood").

For these reasons, we cannot be confident that the immigration judge and the BIA applied the proper legal standard in this case. We therefore grant the petition for review and remand for further proceedings. *See Corado v. Ashcroft*, 384 F.3d 945, 948 (8th Cir. 2004) (per curiam). We express no view on whether the evidence compels the conclusion that petitioners have a well-founded fear of persecution upon return to Kenya, and we leave the determination of eligibility for asylum to the Attorney General in the first instance.

_____