(Slip Opinion)          OCTOBER TERM, 2009                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KUCANA *v.* HOLDER, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 08–911.   Argued November 10, 2009—Decided January 20, 2010

The Illegal Immigration Reform and Immigrant Responsibility Act of
1996 (IIRIRA) amended the Immigration and Nationality Act (INA or
Act), codifying certain rules, earlier prescribed by the Attorney Gen-
eral, that govern the process of reopening removal proceedings.
IIRIRA also added a provision stating that no court has jurisdiction
to review any action of the Attorney General "the authority for which
is specified under this subchapter to be in the discretion of the Attor-
ney General."   8 U. S. C. §1252(a)(2)(B)(ii).   A regulation, amended
just months before IIRIRA's enactment, provides that "[t]he decision
to grant or deny a motion to reopen . . . is within the discretion of the
[Board of Immigration Appeals (BIA)]," 8 CFR §1003.2(a).   As adjudi-
cator in immigration cases, the BIA exercises authority delegated by
the Attorney General.

  Petitioner Kucana moved to reopen his removal proceedings, as-
serting new evidence in support of his plea for asylum.   An Immigra-
tion Judge denied the motion, and the BIA sustained that ruling.
The Seventh Circuit concluded that it lacked jurisdiction to review
the administrative determination, holding that §1252(a)(2)(B)(ii) bars
judicial review not only of administrative decisions made discretion-
ary by statute, but also of those made discretionary by regulation.

*Held:* Section 1252(a)(2)(B)'s proscription of judicial review applies only
  to Attorney General determinations made discretionary by statute,
  not to determinations declared discretionary by the Attorney General
  himself through regulation.  Pp. 6–18.

  (a) The motion to reopen is an "important safeguard" intended "to
ensure a proper and lawful disposition" of immigration proceedings.
*Dada* v. *Mukasey*, 554 U. S. 1, ___.   Federal-court review of adminis-
trative decisions denying motions to reopen removal proceedings

dates back to at least 1916, with the courts employing a deferential abuse-of-discretion standard of review. While the Attorney General's regulation in point, 8 CFR §1003.2(a), places the reopening decision within the BIA's discretion, the statute does not codify that prescription or otherwise "specif[y]" that such decisions are in the Attorney General's discretion. Pp. 6–7.

(b) Section 1252(a)(2)(B) does not proscribe judicial review of denials of motions to reopen. Pp. 8–16.

(1) The *amicus* defending the Seventh Circuit's judgment urges that regulations suffice to trigger §1252(a)(2)(B)(ii)'s proscription. She comprehends "under" in "authority . . . specified under this subchapter" to mean, *e.g.,* "pursuant to," "subordinate to." Administrative regulations count for §1252(a)(2)(B) purposes, she submits, because they are issued "pursuant to," and are measures "subordinate to," the legislation they serve to implement. On that reading, §1252(a)(2)(B)(ii) would bar judicial review of any decision that an executive regulation places within the BIA's discretion, including the decision to deny a motion to reopen. The parties, on the other hand, read the statutory language to mean "specified in," or "specified by," the subchapter. On their reading, §1252(a)(2)(B)(ii) precludes judicial review only when the statute itself specifies the discretionary character of the Attorney General's authority. Pp. 8–9.

(2) The word "under" "has many dictionary definitions and must draw its meaning from its context." *Ardestani* v. *INS*, 502 U. S. 129, 135. Examining the provision at issue in statutory context, the parties' position stands on firmer ground. Section 1252(a)(2)(B)(ii) is far from IIRIRA's only jurisdictional limitation. It is sandwiched between two subsections, §1252(a)(2)(A) and §1252(a)(2)(C), both dependent on statutory provisions, not on any regulation, to define their scope. Given §1252(a)(2)(B)'s statutory placement, one would expect that it, too, would cover statutory provisions alone. Pp. 9–11.

(3) Section 1252(a)(2)(B)(i) places within the no-judicial-review category "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255." Each of the referenced statutory provisions addresses a different form of discretionary relief from removal and contains language indicating that the decision is entrusted to the Attorney General's discretion. Clause (i) does not refer to any regulatory provision. The proximity of clause (i) and the clause (ii) catchall, and the words linking them—"any other decision"—suggests that Congress had in mind decisions of the same genre, *i.e.*, those made discretionary by legislation. Read harmoniously, both clauses convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute. Pp. 11–12.

(4) Also significant is the character of the decisions insulated from judicial review in §1252(a)(2)(B)(i). The listed determinations are substantive decisions the Executive makes involving whether or not aliens can stay in the country. Other decisions specified by statute "to be in the discretion of the Attorney General," and therefore shielded from court oversight by §1252(a)(2)(B)(ii), are of a like kind. See, *e.g.,* §1157(c)(1). Decisions on reopening motions made discretionary by regulation, in contrast, are adjunct rulings. A court decision reversing the denial of a motion to reopen does not direct the Executive to afford the alien substantive relief; ordinarily, it touches and concerns only the question whether the alien's claims have been accorded a reasonable hearing. Had Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation as well as by statute, moreover, Congress could easily have said so, as it did in provisions enacted simultaneously with §1252(a)(2)(B)(ii). See, *e.g.,* IIRIRA, §213, 110 Stat. 3009–572. Pp. 12–14.

(5) The history of the relevant statutory provisions corroborates this determination. Attorney General regulations have long addressed reopening requests. In enacting IIRIRA, Congress simultaneously codified the process for filing motions to reopen and acted to bar judicial review of a number of executive decisions regarding removal. But Congress did not codify the regulation delegating to the BIA discretion to grant or deny reopening motions. This legislative silence indicates that Congress left the matter where it was pre-IIRIRA: The BIA has broad discretion, conferred by the Attorney General, "to grant or deny a motion to reopen," 8 CFR §1003.2(a), but courts retain jurisdiction to review the BIA's decision. It is unsurprising that Congress would leave in place judicial oversight of this "important [procedural] safeguard," *Dada*, 554 U. S., at \_\_\_, where, as here, the alien's underlying asylum claim would itself be reviewable. The REAL ID Act of 2005, which further amended the INA by adding or reformulating provisions on asylum, protection from removal, and even judicial review, did not disturb the unbroken line of decisions upholding court review of administrative denials of motions to reopen. Pp. 14–16.

(c) Any lingering doubt about §1252(a)(2)(B)(ii)'s proper interpretation would be dispelled by a familiar statutory construction principle: the presumption favoring judicial review of administrative action. When a statute is "reasonably susceptible to divergent interpretation," this Court adopts the reading "that executive determinations generally are subject to judicial review." *Gutierrez de Martinez* v. *Lamagno*, 515 U. S. 417, 434. The Court has consistently applied this interpretive guide to legislation regarding immigration, and par-

ticularly to questions concerning the preservation of federal-court jurisdiction. See, *e.g., Reno* v. *Catholic Social Services, Inc.*, 509 U. S. 43, 63–64. Because this presumption is "'well-settled,'" *ibid.,* the Court assumes that "Congress legislates with knowledge of" it, *McNary* v. *Haitian Refugee Center, Inc.*, 498 U. S. 479, 496. It therefore takes "'"clear and convincing evidence"'" to dislodge the presumption. *Catholic Social Services, Inc.,* 509 U. S., at 64. There is no such evidence here. Finally, reading §1252(a)(2)(B)(ii) to apply to matters where discretion is conferred on the BIA by regulation would ignore Congress' design to retain for itself control over federal-court jurisdiction. The Seventh Circuit's construction would free the Executive to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions "discretionary." Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted. Pp. 16–17.

533 F. 3d 534, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SCALIA, KENNEDY, THOMAS, BREYER, and SOTOMAYOR, JJ., joined. ALITO, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–911

AGRON KUCANA, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[January 20, 2010]

JUSTICE GINSBURG delivered the opinion of the Court.

Petitioner Agron Kucana moved to reopen his removal proceedings, asserting new evidence in support of his plea for asylum. An Immigration Judge (IJ) denied the motion, the Board of Immigration Appeals (BIA or Board) sustained the IJ's ruling, and the U. S. Court of Appeals for the Seventh Circuit concluded that it lacked jurisdiction to review the administrative determination. For that conclusion, the court relied on a provision added to the Immigration and Nationality Act (INA or Act), 66 Stat. 166, 8 U. S. C. §1101 *et seq.*, by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546. The provision found dispositive by the Seventh Circuit, 8 U. S. C. §1252(a)(2)(B), states that no court shall have jurisdiction to review any action of the Attorney General "the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General," §1252(a)(2)(B)(ii) (emphasis added).

We granted certiorari to decide whether the proscription of judicial review stated in §1252(a)(2)(B) applies not only to Attorney General determinations made discretionary by

statute, but also to determinations declared discretionary by the Attorney General himself through regulation. We hold that the key words "specified under this subchapter" refer to statutory, but not to regulatory, specifications. We so rule based on the longstanding exercise of judicial review of administrative rulings on reopening motions, the text and context of §1252(a)(2)(B), and the history of the relevant statutory provisions. We take account, as well, of the "presumption favoring interpretations of statutes [to] allow judicial review of administrative action." *Reno* v. *Catholic Social Services, Inc.,* 509 U. S. 43, 63–64 (1993) (quoting *McNary* v. *Haitian Refugee Center, Inc.*, 498 U. S. 479, 496 (1991)). Separation-of-powers concerns, more-over, caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain.

## I

### A

In IIRIRA, Congress for the first time codified certain rules, earlier prescribed by the Attorney General, govern-ing the reopening process. The amended Act instructs that reopening motions "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." §1229a(c)(7)(B). Congress also prescribed that "the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." §1229a(c)(7)(C)(i). Among matters excepted from the 90-day limitation are motions to reopen asylum applications because of changed conditions in the country of nationality or removal. §1229a(c)(7)(C)(ii).

Section 1252(a)(2), captioned "Matters not subject to judicial review," contains the provision on which this case turns. Subparagraph (B) of that paragraph, headed "De-nials of discretionary relief," states:

"Notwithstanding any other provision of law (statutory or nonstatutory), . . . except as provided in subparagraph (D),[1] and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

"(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title,[2] or

"(ii) any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter[3] to be in the discretion of the Attorney General . . . , other than the granting of relief under section 1158(a) of this title."[4]

_____

[1] Subparagraph (D) of §1252(a)(2), enacted in 2005, REAL ID Act of 2005 (REAL ID Act), §106(a), 119 Stat. 310, adds:

"Nothing in subparagraph (B) . . . or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."

The addition of 8 U. S. C. §1252(a)(2)(D) in 2005 did not change the operative language of §1252(a)(2)(B)(ii) as enacted in 1996.

The REAL ID Act amendments also inserted into this introductory clause, *inter alia*, the words "(statutory or nonstatutory)." §106(a)(1)(A)(ii), 119 Stat. 310. The introductory clause, however, does not define the scope of 8 U. S. C. §1252(a)(2)(B)(ii)'s jurisdictional bar. It simply informs that once the scope of the bar is determined, jurisdiction is precluded regardless of what any *other* provision or source of law might say.

[2] Sections 1182(h) and 1182(i) address waivers of inadmissibility based on certain criminal offenses, and fraud or misrepresentation, respectively; §1229b addresses cancellation of removal; §1229c, voluntary departure; and §1255, adjustment of status.

[3] "[T]his subchapter" refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U. S. C. §§1151–1381 and titled "Immigration."

[4] The exception for relief under §1158(a) refers to administrative decisions whether to grant asylum. Kucana's petition for judicial review is

A regulation, amended in 1996, just months before Congress enacted IIRIRA, 61 Fed. Reg. 18904, Pt. 3, §3.2(a), states that "[t]he decision to grant or deny a motion to reopen . . . is within the discretion of the Board." 8 CFR §1003.2(a) (2009). As adjudicator in immigration cases, the Board exercises authority delegated by the Attorney General. See 8 U. S. C. §1103(g)(2); 8 CFR §1003.1. See also 8 CFR §1003.23(b)(3) (governing motions to reopen filed with an IJ).

## B

Kucana, a citizen of Albania, entered the United States on a business visa in 1995 and remained after the visa expired. Alleging that he would be persecuted based on his political beliefs if returned to Albania, Kucana applied for asylum and withholding of removal in 1996. An IJ determined that Kucana was removable and scheduled a hearing to evaluate his eligibility for asylum. When Kucana failed to appear for the hearing, the IJ immediately ordered his removal *in absentia.* Kucana filed a motion to reopen, explaining that he had missed his hearing because he had overslept. The IJ denied the motion, and the BIA affirmed in 2002. Kucana did not seek judicial review, nor did he leave the United States.

Kucana filed a second motion to reopen his removal proceedings in 2006, contending that conditions in Albania had worsened.[5] The BIA denied relief; it concluded that conditions in Albania had actually improved since 1997. Arguing that the BIA had abused its discretion in denying

_____

limited to the denial of his motion to reopen; he does not challenge in this proceeding the decision denying his application for asylum.

[5] The statute "guarantees to each alien the right to file 'one motion to reopen proceedings.'" *Dada* v. *Mukasey*, 554 U. S. 1, __ (2008) (slip op., at 12) (quoting §1229a(c)(7)(A)). Attorney General regulations permit further motions to reopen to seek asylum or withholding of removal based on changed conditions in the country of nationality or removal. See 8 CFR §1003.2(c)(3)(ii) (2009).

his motion, Kucana filed a petition for review in the Seventh Circuit.

In a fractured decision, the Seventh Circuit dismissed the petition for lack of jurisdiction. *Kucana* v. *Mukasey*, 533 F. 3d 534, 539 (2008). The court held that 8 U. S. C. §1252(a)(2)(B)(ii) bars judicial review not only of administrative decisions made discretionary by statute, but also "when the agency's discretion is specified by a regulation rather than a statute." 533 F. 3d, at 536.[6] In so ruling, the Seventh Circuit created a split between itself and other Courts of Appeals, all of them holding that denials of reopening motions are reviewable in court.[7]

Judge Ripple concurred *dubitante*. He acknowledged that the court was following an earlier decision, *Ali* v. *Gonzales*, 502 F. 3d 659 (CA7 2007),[8] but "suggest[ed] that, had Congress intended to deprive th[e] court of jurisdiction . . . , it would have done so explicitly, as it did in 8 U. S. C. §1252(a)(2)(B)(i)." 533 F. 3d, at 540. The court,

---

[6] While recognizing that a regulation, rather than the INA itself, confers on the Board discretion to grant or deny a motion to reopen, the Court of Appeals said that the regulation, §1003.2(a), "draw[s] . . . force from provisions in the Act allowing immigration officials to govern their own proceedings." 533 F. 3d, at 536. The "force," according to the Seventh Circuit, comes from 8 U. S. C. §1229a(c)(7), which it described as providing "authority for reopening by [the] Board." 533 F. 3d, at 536. Section 1229a(c)(7), however, is not directed to the agency's discretion to grant or deny motions to reopen. In the main, "it simply lays out the requirements *an alien* must fulfill when filing a motion to reopen." *Id.,* at 541 (Cudahy, J., dissenting) (emphasis added). See also *infra*, at 7, n. 9.

[7] See *Singh* v. *Mukasey*, 536 F. 3d 149, 153–154 (CA2 2008); *Jahjaga* v. *Attorney Gen. of United States*, 512 F. 3d 80, 82 (CA3 2008); *Zhao* v. *Gonzales*, 404 F. 3d 295, 303 (CA5 2005); *Miah* v. *Mukasey*, 519 F. 3d 784, 789, n. 1 (CA8 2008); *Medina-Morales* v. *Ashcroft*, 371 F. 3d 520, 528–529 (CA9 2004); *Infanzon* v. *Ashcroft*, 386 F. 3d 1359, 1361–1362 (CA10 2004).

[8] *Ali* involved a decision, made discretionary by regulation, denying an alien's request for a continuance.

he concluded, should revisit both *Ali* and *Kucana* and "chart a course . . . more closely adher[ing] to the statutory language chosen and enacted by Congress." 533 F. 3d, at 540.

Judge Cudahy dissented. Given the absence of "specific [statutory] language entrusting the decision on a motion to reopen to the discretion of the Attorney General," *ibid.* (internal quotation marks omitted), he saw no impediment to the exercise of jurisdiction over Kucana's petition. In support of his position, Judge Cudahy invoked the "strong presumption that Congress intends judicial review of administrative action." *Id.,* at 541 (quoting *Traynor* v. *Turnage*, 485 U. S. 535, 542 (1988)). With four judges dissenting, the Seventh Circuit denied Kucana's petition for rehearing en banc. See 533 F. 3d, at 541–542 (dissenting statement of Ripple, J., joined by Rovner, Wood, and Williams, JJ.).

We granted certiorari, 556 U. S. ___ (2009), to resolve the Circuit conflict. As it did before the Seventh Circuit, the Government agrees with Kucana that §1252(a)(2)(B)(ii) does not remove federal-court jurisdiction to review the denial of a reopening motion. We appointed Amanda C. Leiter to brief and argue the case, as *amicus curiae*, in support of the Seventh Circuit's judgment. 557 U. S. ___ (2009). Ms. Leiter has ably discharged her assigned responsibilities.

## II

The motion to reopen is an "important safeguard" intended "to ensure a proper and lawful disposition" of immigration proceedings. *Dada* v. *Mukasey*, 554 U. S. 1, ___ (2008) (slip op., at 15–16); cf. *Stone* v. *INS*, 514 U. S. 386, 401 (1995) (analogizing motions to reconsider immigration decisions to motions for relief from a judgment under Federal Rule of Civil Procedure 60(b)). Federal-court review of administrative decisions denying motions

to reopen removal proceedings dates back to at least 1916. See *Dada*, 554 U. S., at \_\_\_ (slip op., at 9–10) (citing cases). This Court has ultimately reviewed reopening decisions on numerous occasions. See, *e.g., INS* v. *Doherty*, 502 U. S. 314, 322–324 (1992); *INS* v. *Abudu*, 485 U. S. 94, 104–111 (1988); *INS* v. *Rios-Pineda*, 471 U. S. 444, 449–452 (1985); *INS* v. *Jong Ha Wang*, 450 U. S. 139, 141–146 (1981) *(per curiam)*. Mindful of the Board's "broad discretion" in such matters, however, courts have employed a deferential, abuse-of-discretion standard of review. See *Doherty*, 502 U. S., at 323 (internal quotation marks omitted).

The Seventh Circuit held that Congress removed the authority long exercised by federal courts to review denials of an alien's reopening request. Congress did so, the Court of Appeals said, in §1252(a)(2)(B)(ii), which removes jurisdiction to review a decision of the Attorney General "the authority for which is specified under this subchapter to be in the discretion of the Attorney General." All agree that the Attorney General's regulation, 8 CFR §1003.2(a), places "[t]he decision to grant or deny a motion to reopen . . . within the discretion of the Board." But the statute does not codify that prescription,[9] and does not otherwise "specif[y]" that reopening decisions are "in the discretion of the Attorney General."[10]

———————

[9] As earlier noted, see *supra*, at 5, n. 6, the Seventh Circuit stated that the regulation specifying the Board's discretion over motions to reopen, 8 CFR §1003.2(a), "draw[s] [its] force from provisions in the Act." 533 F. 3d, at 536 (citing 8 U. S. C. §1229a(c)(7)). It is hard to see how the regulation could draw force from §1229a(c)(7), for the regulation was already in force when that statutory provision was enacted. The regulation, 8 CFR §1003.2(a), was published April 29, 1996, 61 Fed. Reg. 18900, 18904; 8 U. S. C. §1229a(c)(7) was enacted September 30, 1996, §304, 110 Stat. 3009–593.

[10] The only statutory reference to discretion respecting motions to reopen appears in §1229a(c)(7)(C)(iv)(III), which gives the Attorney General "discretion" to waive one of the statute's time limitations in

### III

### A

### 1

The Board's discretionary authority to act on a motion to reopen, we have thus far explained, is "specified" not in a statute, but only in the Attorney General's regulation, which instructs: "The decision to grant or deny a motion to reopen . . . is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief." 8 CFR §1003.2(a). Nevertheless, in defense of the Seventh Circuit's judgment, *amicus* urges that regulations suffice to trigger 8 U. S. C. §1252(a)(2)(B)(ii)'s proscription of judicial review.

The jurisdiction-stripping provision, *amicus* reminds, refers to "authority . . . specified under this subchapter." As she reads that formulation, the word "under" is key. She comprehends "under" to mean "pursuant to," "subordinate to," "below or lower than," "inferior . . . in rank or importance," "by reason of the authority of." Brief for

––––––––––

extraordinary circumstances.

*Amicus* urges that "the statutory language governing motions to reopen anticipates an exercise of Attorney General discretion when it states, '[t]he motion to reopen shall state the new facts that will be proven at a hearing to be held *if the motion is granted*.'" Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 19, n. 8 (quoting §1229a(c)(7)(B)). One can demur to the argument that Congress anticipated that decisions on reopening motions would be discretionary. Even so, the statutory proscription Congress enacted, §1252(a)(2)(B)(ii), speaks of authority "specified"—not merely assumed or contemplated—to be in the Attorney General's discretion. "Specified" is not synonymous with "implied" or "anticipated." See Webster's New Collegiate Dictionary 1116 (1974) ("specify" means "to name or state explicitly or in detail"). See also *Soltane* v. *U. S. Dept. of Justice*, 381 F. 3d 143, 147 (CA3 2004) (Alito, J.) ("[W]e do not think . . . that the use of marginally ambiguous statutory language, without more, is adequate to 'specif[y]' that a particular action is within the Attorney General's discretion for the purposes of §1252(a)(2)(B)(ii).").

Court-Appointed *Amicus Curiae* in Support of Judgment
Below 15, 17 (citing, *inter alia*, *Florida Dept. of Revenue* v.
*Piccadilly Cafeterias, Inc.*, 554 U. S. ___, ___ (2008) (slip
op., at 5); *Ardestani* v. *INS*, 502 U. S. 129, 135 (1991)).
Administrative regulations count for §1252(a)(2)(B) pur-
poses, she urges, because they are issued "pursuant to,"
and are measures "subordinate to," the legislation they
serve to implement. The parties, on the other hand, read
"specified under this subchapter" to mean "specified in," or
"specified by," the subchapter.[11]

On the reading *amicus* advances, §1252(a)(2)(B)(ii)
would bar judicial review of any decision that an executive
regulation places within the BIA's discretion, including
the decision to deny a motion to reopen. On the parties'
reading, however, §1252(a)(2)(B)(ii) precludes judicial
review only when the statute itself specifies the discre-
tionary character of the Attorney General's authority.

### 2

As the parties and *amicus* recognize, their diverse ren-
derings of "under," standing alone, do not equip us to
resolve this case. The word "under" is chameleon; it "has
many dictionary definitions and must draw its meaning
from its context." *Ardestani*, 502 U. S., at 135.[12] Examin-

––––––––––

[11] Defining "under," as used in §1252(a)(2)(B)(ii), to mean "pursuant
to," or "subordinate to," and not "in" or "by," the Attorney General
observes, would give rise to "a fatal anomaly": "Section 1252(a)(2)(B)(ii)
would apply only to regulations promulgated 'under the authority of'
the relevant subchapter, and not to specifications of discretion in the
subchapter itself." Reply Brief for Respondent 6.

[12] In an appendix to her brief, *amicus* lists hundreds of statutory
provisions in which regulations are described as being issued "under" a
statute. See App. A to Brief for Court-Appointed *Amicus Curiae* in
Support of Judgment Below. In every one of those examples, Congress
expressly used the word "regulations."

At oral argument, *amicus* called our attention to three instances in
which Congress used the words "specified under" in Title 8, without any
reference to "regulations," to encompass agency matters. Tr. of Oral

ing, in statutory context, the provision in which the word "under" is embedded, we conclude that the parties' position stands on firmer ground.

Section 1252(a)(2)(B)(ii), the provision at issue here, is far from the only jurisdictional limitation in IIRIRA. See *Dada*, 554 U. S., at ___ (slip op., at 13) ("In reading a statute we must not look merely to a particular clause, but consider in connection with it the whole statute." (internal quotation marks omitted)); *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Section 1252(a)(2), titled "Matters not subject to judicial review," lists a variety of agency determinations the federal courts lack jurisdiction to review. Those determinations divide into three categories. The first, §1252(a)(2)(A), concerns immigration officers' determinations whether aliens applying for admission are admissible. Next in statutory order is the provision before us, §1252(a)(2)(B), which involves denials of discretionary relief. The last category, §1252(a)(2)(C), concerns final orders of removal entered against criminal aliens.

Both §1252(a)(2)(A) and §1252(a)(2)(C) depend on statutory provisions, not on any regulation, to define their scope. The latter provision, the criminal alien bar, precludes judicial review of "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in" §1182(a)(2), §1227(a)(2)(A)(iii), (B), (C), or (D), or certain offenses covered in §1227(a)(2)(A)(ii). All the defining references are statutory; none invokes a regulation. The same holds

––––––––––

Arg. 47–48, 54–55 (citing §§1227(a)(1)(H), 1375a(a)(6), and 1537(b)(1)). These three provisions point to other parts of the Act, which in turn rely on administrative determinations. *Amicus*' research underscores the point that context defines "under."

for the admissibility bar in §1252(a)(2)(A). Given §1252(a)(2)(B)'s statutory placement, sandwiched between subsections (a)(2)(A) and (a)(2)(C), one would expect that it, too, would cover statutory provisions alone.

### 3

Focusing on §1252(a)(2)(B), we note the lead line serving to introduce both of the subparagraph's two clauses: "[N]o court shall have jurisdiction to review . . . ." Clause (i) then places within the no-judicial-review category "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255." Each of the statutory provisions referenced in clause (i) addresses a different form of discretionary relief from removal, see *supra*, at 3, n. 2, and each contains language indicating that the decision is entrusted to the Attorney General's discretion. See, *e.g.,* §1182(h) ("The Attorney General may, in his discretion, waive [inadmissibility based on certain criminal offenses]."). Clause (i) does not refer to any regulatory provision.

To the clause (i) enumeration of administrative judgments that are insulated from judicial review, Congress added in clause (ii) a catchall provision covering "any other decision . . . the authority for which is specified under this subchapter." The proximity of clauses (i) and (ii), and the words linking them—"any other decision"— suggests that Congress had in mind decisions of the same genre, *i.e.*, those made discretionary by legislation.[13] The clause (i) enumeration, we find, is instructive in determin-

_____

[13] Congress excepted from §1252(a)(2)(B)(ii) "the granting of relief under [§]1158(a)." Section 1158 concerns applications for asylum. Absent the exception, asylum applicants might fall within §1252(a)(2)(B)(ii)'s jurisdictional bar because a statutory provision, §1158(b)(1)(A), specifies that "the Attorney General *may* grant asylum." (Emphasis added.) See *Zadvydas* v. *Davis*, 533 U. S. 678, 697 (2001) ("'may' suggests discretion").

ing the meaning of the clause (ii) catchall.  Read harmoniously, both clauses convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute.  See *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. ___, ___ (2008) (slip op., at 9) ("[W]hen a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows.").[14]

4

We also find significant the character of the decisions Congress enumerated in §1252(a)(2)(B)(i), thereby insulating them from judicial review.  As the Government explained at oral argument, the determinations there listed are "substantive decisions . . . made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not."  Tr. of Oral Arg. 14.[15]  They include waivers of inadmissibility based on certain criminal offenses, §1182(h), or based on fraud or misrepresentation, §1182(i); cancellation of re-

_____

[14] *Amicus* suggests that the word "any" in §1252(a)(2)(B)(ii) should be read expansively to draw in decisions made discretionary by regulation. Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 21–23.  But §1252(a)(2)(B)(ii) does not say "any decision"; it says "any *other* decision."  And as we have just explained, *other* decisions falling within §1252(a)(2)(B)(ii)'s compass are most sensibly understood to include only decisions made discretionary by Congress.  See Brief for Respondent 19–20, and n. 11 (noting that "over thirty provisions in the relevant subchapter of the INA . . . explicitly grant the Attorney General . . . 'discretion' to make a certain decision").

[15] Counsel offered this explanation in response to the question: "Why would Congress want to exclude review for discretionary judgments by the Attorney General that are recited explicitly to be discretionary in the statute, but provide judicial review for judgments that are just as lawfully discretionary because the Attorney General is given the authority to make them discretionary and has done so?"  Tr. of Oral Arg. 9; see *id.,* at 13–14.

moval, §1229b; permission for voluntary departure, §1229c; and adjustment of status, §1255.

Other decisions specified by statute "to be in the discretion of the Attorney General," and therefore shielded from court oversight by §1252(a)(2)(B)(ii), are of a like kind. See, *e.g.,* §1157(c)(1) (discretion to admit refugees "determined to be of special humanitarian concern to the United States"); §1181(b) (discretion to waive requirement of documentation for readmission); §1182(a)(3)(D)(iv) (discretion to waive, in certain cases, inadmissibility of aliens who have affiliated with a totalitarian party). Decisions on reopening motions made discretionary by regulation, in contrast, are adjunct rulings: The motion to reopen is a procedural device serving to ensure "that aliens [a]re getting a fair chance to have their claims heard." Tr. of Oral Arg. 17. A court decision reversing the denial of a motion to reopen does not direct the Executive to afford the alien substantive relief; ordinarily, it touches and concerns only the question whether the alien's claims have been accorded a reasonable hearing.

If Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute, moreover, Congress could easily have said so. In other provisions enacted simultaneously with §1252(a)(2)(B)(ii), Congress expressed precisely that meaning. See IIRIRA, §213, 110 Stat. 3009–572 ("immigration benefits pursuant to this Act; or the regulations promulgated thereunder"), codified at 8 U. S. C. §1324c(e)(2); IIRIRA, §372, 110 Stat. 3009–646 ("any of the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder"), codified at 8 U. S. C. §1103(a)(10). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken* v. *Holder*,

556 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 11) (internal quotation marks omitted).

## B

The history of the relevant statutory provisions corroborates our determination that §1252(a)(2)(B)(ii) does not proscribe judicial review of denials of motions to reopen. Attorney General regulations have long addressed reopening requests. See 6 Fed. Reg. 71–72 (1941). The current regulations, adopted in 1996, 61 Fed. Reg. 18904–18906, derive from rules published in 1958, see 23 Fed. Reg. 9118–9119; *Dada,* 554 U. S., at \_\_\_ (slip op., at 10).

Enacting IIRIRA in 1996, Congress "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Id.,* at \_\_\_ (slip op., at 12). IIRIRA largely codified the Attorney General's directions on filing reopening motions. See §1229a(c)(7) (guaranteeing right to file one motion, prescribing contents, and setting deadlines).

In the same legislation, Congress amended the INA aggressively to expedite removal of aliens lacking a legal basis to remain in the United States. See *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U. S. 471, 475 (1999). Among IIRIRA's several proscriptions of judicial review is the one here at issue, §1252(a)(2)(B)(ii), barring review of administrative decisions Congress placed within the Attorney General's discretion.

Congress thus simultaneously codified the process for filing motions to reopen and acted to bar judicial review of a number of executive decisions regarding removal. But Congress did not codify the regulation delegating to the BIA discretion to grant or deny motions to reopen. See 8 CFR §1003.2(a) (reopening may be entertained not only on application; Board "may at any time reopen . . . on its own motion any case in which it has rendered a decision"). Had Congress elected to insulate denials of motions to

reopen from judicial review, it could have so specified together with its codification of directions on filing reopening motions.

From the Legislature's silence on the discretion of the Attorney General (or his delegate, the Board) over reopening motions, see *supra*, at 7–8, n. 10, we take it that Congress left the matter where it was pre-IIRIRA: The BIA has broad discretion, conferred by the Attorney General, "to grant or deny a motion to reopen," 8 CFR §1003.2(a), but courts retain jurisdiction to review, with due respect, the Board's decision.[16] It is unsurprising that Congress would leave in place judicial oversight of this "important [procedural] safeguard" designed "to ensure a proper and lawful disposition" of immigration proceedings, *Dada*, 554 U. S., at ___ (slip op., at 15–16), where, as here, the alien's underlying claim (for asylum) would itself be reviewable.[17]

In the REAL ID Act, Congress further amended the INA. By 2005, two Courts of Appeals had already ruled that 8 U. S. C. §1252(a)(2)(B)(ii) did not preclude them

_____

[16] A statement in the House Conference Report on IIRIRA, *amicus* suggests, supports her argument that Congress intended broadly to foreclose judicial review of reopening denials. Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 32–34. The report states that §1252(a)(2)(B) "bars judicial review . . . of any decision or action of the Attorney General which is specified to be in the discretion of the Attorney General." H. R. Conf. Rep. No. 104–828, p. 219 (1996). That statement, as we read it, simply summarizes the statutory text at a general level. It does not home in on the question whether decisions made discretionary only by regulation are judicially reviewable.

[17] We do not reach the question whether review of a reopening denial would be precluded if the court would lack jurisdiction over the alien's underlying claim for relief. Some courts confronting that question have refused to consider petitions for review of a reopening denial that seeks to revisit the denial of the underlying claim; they have reasoned that hearing the petition would end-run the bar to review of the petitioner's core claim. See, *e.g., Assaad* v. *Ashcroft*, 378 F. 3d 471, 473–475 (CA5 2004) *(per curiam)*.

from reviewing denials of motions to reopen, see *Infanzon* v. *Ashcroft*, 386 F. 3d 1359, 1361–1362 (CA10 2004); *Medina-Morales* v. *Ashcroft*, 371 F. 3d 520, 528–529 (CA9 2004), and no court had reached a contrary result. Although adding or reformulating provisions on asylum, §101(a), (b), 119 Stat. 302–303, protection from removal, §101(c), (d), *id.,* at 303–305, even judicial review, §106, *id.,* at 310–311, the REAL ID Act did not disturb the unbroken line of decisions upholding court review of administrative denials of motions to reopen. See *supra*, at 6–7; *supra*, at 3, n. 1.[18]

IV

Any lingering doubt about the proper interpretation of 8 U. S. C. §1252(a)(2)(B)(ii) would be dispelled by a familiar principle of statutory construction: the presumption favoring judicial review of administrative action. When a statute is "reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Gutierrez de Martinez* v. *Lamagno*, 515 U. S. 417, 434 (1995). We have consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction. See, *e.g., INS* v. *St. Cyr*, 533 U. S. 289, 298 (2001); *Catholic Social Services, Inc.*, 509 U. S., at 63–64; *McNary*, 498 U. S., at 496. Because the "presumption favoring interpretations of statutes [to] allow judicial

_____

[18] We express no opinion on whether federal courts may review the Board's decision not to reopen removal proceedings *sua sponte*. Courts of Appeals have held that such decisions are unreviewable because *sua sponte* reopening is committed to agency discretion by law, see 5 U. S. C. §701(a)(2). See, *e.g., Tamenut* v. *Mukasey*, 521 F. 3d 1000, 1003–1004 (CA8 2008) (en banc) *(per curiam)* (agreeing with ten other Courts of Appeals).

review of administrative action" is "well-settled," *Catholic Social Services, Inc.*, 509 U. S., at 63–64 (quoting *McNary*, 498 U. S., at 496), the Court assumes that "Congress legislates with knowledge of" the presumption, *id.,* at 496. It therefore takes "clear and convincing evidence" to dislodge the presumption. *Catholic Social Services, Inc.,* 509 U. S., at 64 (internal quotation marks omitted). There is no such evidence here.

Finally, we stress a paramount factor in the decision we render today. By defining the various jurisdictional bars by reference to other provisions in the INA itself, Congress ensured that it, and only it, would limit the federal courts' jurisdiction. To read §1252(a)(2)(B)(ii) to apply to matters where discretion is conferred on the Board by regulation, rather than on the Attorney General by statute, would ignore that congressional design. If the Seventh Circuit's construction of §1252(a)(2)(B)(ii) were to prevail, the Executive would have a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions "discretionary." Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted.

V

A statute affecting federal jurisdiction "must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Cheng Fan Kwok* v. *INS*, 392 U. S. 206, 212 (1968). As we have noted, see *supra*, at 14, and as *amicus* emphasizes, "many provisions of IIRIRA [we]re aimed at protecting [from court review exercises of] the Executive's discretion." *American- Arab Anti-Discrimination Comm.*, 525 U. S., at 486 (emphasis deleted). But "no law pursues its purpose at all costs, and . . . the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Rapanos* v. *United States*, 547 U. S. 715,

752 (2006) (plurality opinion). While Congress pared back judicial review in IIRIRA, it did not delegate to the Executive authority to do so. Action on motions to reopen, made discretionary by the Attorney General only, therefore remain subject to judicial review.

\* \* \*

For the reasons stated, the judgment of the United States Court of Appeals for the Seventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–911

_____

## AGRON KUCANA, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[January 20, 2010]

JUSTICE ALITO, concurring in the judgment.

I agree that the Court of Appeals had jurisdiction to review the denial of petitioner's motion to reopen his removal proceeding, but I would decide this case on narrower grounds. The controlling statutory provision, 8 U. S. C. §1252(a)(2)(B)(ii), states that "no court shall have jurisdiction to review . . . any . . . decision . . . of the Attorney General . . . the authority for which is specified *under this subchapter* to be in the discretion of the Attorney General." (Emphasis added.) The phrase "under this subchapter" refers to Subchapter II of Chapter 12 of Title 8, 8 U. S. C. §§1151–1381, see *ante*, at 3, n. 3, and, as the Court notes, no provision of Subchapter II confers discretionary authority on the Attorney General to decide motions to reopen. See *ante*, at 7–8, 14–15. The Court of Appeals, however, held that the Attorney General's decision in this case was unreviewable because a regulation, 8 CFR §1003.2(a) (2009), made that decision discretionary.

If this regulation had been promulgated pursuant to authority conferred by a provision of Subchapter II, we would have to confront the question that the opinion of the Court addresses. But it seems clear that 8 CFR §1003.2, at least insofar as it gave the Attorney General the discretionary authority that he exercised in this case, is grounded on authority conferred under *Subchapter I* of

Chapter 12 of Title 8, 8 U. S. C. §§1101–1107. See 8 U. S. C. §1103(a) (1994 ed.) (giving the Attorney General the authority to "establish such regulations . . . as he deems necessary for carrying out his authority under [Chapter 12 of Title 8 of the U. S. Code]").

The *amicus curiae* whom we appointed to defend the decision of the Court of Appeals has attempted to link 8 CFR §1003.2 to Subchapter II. She notes that the Attorney General, in promulgating that regulation, cited not only 8 U. S. C. §1103(a), but also a provision of Subchapter II, 8 U. S. C. §1252b (1994 ed.). See 61 Fed. Reg. 18900, 18904 (1996).[1] This latter statutory provision[2] conferred the authority to reopen a narrow set of deportation orders, *i.e.*, those issued after the alien failed to appear at the deportation hearing. Although this statutory provision

_____

[1] Two other provisions in Subchapter II refer to motions to reopen, but both were enacted after the implementation of 8 CFR §1003.2 (2009), and therefore that regulation cannot be said to implement these provisions. See *ante* 7, n. 9. Title 8 U. S. C. §1229a(c)(7), which addresses the procedural requirements for filing such a motion, and §1252(b)(6), which requires consolidation of a motion to reopen with the underlying removal order, were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) in September 1996 and made effective in April 1997. See 110 Stat. 3009–593, 3009–609. Prior to that time, the consolidation provision was found in Subchapter I. See 8 U. S. C. §1105(a)(6) (1994 ed.).

[2] This provision conferred the authority to rescind a deportation order "upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances . . . or upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice . . . or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien." 8 U. S. C. §1252b(c)(3) (1994 ed.).

A similar provision, enacted as part of IIRIRA, is now contained in 8 U. S. C. §1229a(b)(5)(C) (2006 ed.). As the Government notes, this provision does not apply in this case because petitioner challenges the denial of his second motion to reopen, which the parties agree is governed by §1229a(c)(7). Brief for Respondent 21, n. 13; *id.,* at 6, n. 4.

does not apply to petitioner's motion to reopen, *amicus* argues that "the section's brief allusion to motions to reopen clearly presupposed that the Attorney General had in place a more general procedure for reviewing all motions to reopen removal proceedings." Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 41–42.

*Amicus'* argument is ingenious but ultimately unpersuasive. At most, 8 U. S. C. §1252b (1994 ed.) may be read as implicitly authorizing the promulgation of a regulation giving the Attorney General the discretion to reopen certain deportation orders that were issued in absentia. Petitioner's second motion to reopen, however, seeks reopening on grounds outside of §1252b, and therefore 8 CFR §1003.2, insofar as it applies to petitioner's case, was not issued pursuant to Subchapter II and does not implement any provision of that Subchapter.

For these reasons, this case can and should be decided on the narrow ground that, even if some regulations can render a decision of the Attorney General unreviewable, the regulation at issue in this case does not have that effect.