BARKETT, Circuit Judge,
dissenting:
I dissent because Jimenez-Galicia’s eligibility to be considered by the Attorney General for cancellation of removal is reviewable by this court, notwithstanding that the ultimate decision of the Attorney General whether to grant such relief is discretionary pursuant to 8 U.S.C. § 1229b, and cannot be reviewed. Jimenez-Galicia’s eligibility to be considered for the exercise of that discretion is reviewable because the statutory requirement that he be a person of good moral character has not been specifically designated as being within the Attorney General’s discretion.
Under 8 U.S.C. § 1252(a)(2)(B), entitled “Denials of discretionary relief,” we are precluded from reviewing
(i) any judgment regarding the granting of relief under section 1182(h), 1182®, 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.
As addressed more fully below, the plain language of § 1252(a)(2)(B)® limits the preclusion of judicial review only to the “judgment,” that is, the Attorney General’s ultimate discretionary decision granting or *1212 denying one of the five enumerated forms of relief. Section 1252(a)(2)(B)(ii) separately addresses “any other decision or action of the Attorney General ... which is specified ... to be in the discretion of the Attorney General.” By structuring the judicial review provisions of § 1252(a)(2)(B) into two discrete clauses, Congress reflected the distinction between the ultimate discretionary authority of the Attorney General to grant a specific form of immigration relief — addressed by clause (i) — and the decisions regarding the underlying statutory prerequisites for eligibility for consideration for ultimate relief — addressed by clause (ii).
Moreover, the Supreme Court’s recent decision in Kucana v. Holder, 558 U.S. 233, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010), clarified that Congress, when enacting the judicial review provisions of § 1252(a)(2)(B), only intended to preclude review of those decisions where Congress has specifically granted the Attorney General discretionary authority in the statute. 130 S.Ct. at 836-37 (“Read harmoniously, both clauses [of 8 U.S.C. § 1252(a)(2)(B) ] convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General’s discretionary authority in the statute.”).
Here, where Jimenez^Galicia is not challenging the Board of Immigration Appeals’s, (“BIA”),[1] judgment regarding its ultimate exercise of discretion but instead one of its preliminary decisions regarding his statutory eligibility to be considered for the exercise of discretion, contrary to the majority’s position, § 1252(a)(2)(B)(i) does not preclude our review. Nor are we precluded from judicial review pursuant to § 1252(a)(2)(B)(ii) because Congress has not specified that the good moral character prerequisite to eligibility for relief is within the Attorney General’s discretion. I amplify these points below.
I. Under § 1252(a)(2)(B)(i) Congress Eliminated Judicial Review of Only the Attorney General’s Ultimate Decision Regarding Certain Forms of Immigration Relief
First, § 1252(a)(2)(B)® provides that a court may not review “any judgment regarding the granting of relief’ under five distinct provisions of the INA. The majority takes the position that under § 1252(a)(2)(B)®, courts are precluded from reviewing, not only the Attorney General’s ultimate judgment, but also decisions regarding the eligibility requirements for any of the five forms of relief enumerated therein if a court deems those decisions “discretionary.” This, however, misreads the plain language of § 1252(a)(2)(B)®, which precludes judicial review of only “any judgment” regarding the granting of one of five forms of immigration relief. Indeed, each of the listed statutes in § 1252(a)(2)(B)®, in its own terms, expressly provides that it is the ultimate decision to grant the enumerated form of relief that is within the Attorney General’s discretion.[2] See Kucana, 130 *1213 S.Ct. at 836 (citing only to the discretionary language regarding the granting of the ultimate relief under 8 U.S.C. § 1182(h) in support of its acknowledgment that each of § 1252(a)(2)(B)(i)’s five enumerated statutes “contains language indicating that the decision is entrusted to the Attorney General’s discretion”). Thus, in enacting clause (i) of § 1252(a)(2)(B), Congress intended to preclude our review only of that ultimate discretionary decision and not of any preliminary determinations regarding eligibility for consideration of that ultimate decision.
Precluding judicial review of only the ultimate decision of the Attorney General is consistent with the long-standing recognition of the distinction between an individual’s statutory eligibility for a particular form of discretionary immigration relief and the Attorney General’s actual exercise of discretion. For example, in Jay v. Boyd, 351 U.S. 345, 353, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), the Supreme Court explained that “[eligibility for [suspension of deportation] is governed by specific statutory standards which provide a right to a ruling on an applicant’s eligibility.” The Court went on to distinguish the inquiry regarding statutory eligibility from the ultimate act of discretion. “However, Congress did not provide statutory standards for determining who, among qualified applicants for suspension, should[1] receive the ultimate relief. That determination is left to the sound discretion of the Attorney General.” Jay, 351 U.S. at 353, 76 S.Ct. 919.[3] See also Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir.2006) (“Obtaining ... cancellation of removal is a two-step process. First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief.”).
This two-step process is reflected in the structure of § 1252(a)(2)(B), which is divided between clause (i) which is limited to the Attorney General’s ultimate discretionary “judgment” in granting or denying relief, and clause (ii) which addresses the decisions pertaining to the requirements for eligibility to be considered for relief. Accordingly, nothing in the statute’s plain language or structure supports the conclusion that our review of the BIA’s preliminary determination regarding Jimenez^Galicia’s “good moral character” is precluded under clause (i) of § 1252(a)(2)(B). And as more fully amplified in the next section, the Supreme Court’s decision in Kucana makes clear that under clause (ii), judicial review is precluded only when Congress has explicitly specified that a particular determination is left to the discretion of the Attorney General.
II. Congress Eliminated Judicial Review of Other Decisions Only When Designated by Congress to be Within the Attorney General’s Discretion
As § 1252(a)(2)(B)(i), by its own terms, does not preclude our review of Jimenez *1214 Galicia’s petition which does not challenge the BIA’s ultimate exercise of discretion, we next consider whether § 1252(a)(2)(B)(ii) precludes judicial review of the BIA’s determination that JimenezGalicia lacks “good moral character.”
In Kucana, the Supreme Court specifically addressed the scope of the limitation on judicial review under § 1252(a)(2)(B)(ii) and held that “[r]ead harmoniously, both clauses [ (i) and (ii) ] bar court review of discretionary decisions only when Congress itself set out the Attorney General’s discretionary authority in the statute.” 130 S.Ct. at 837. In reaching this holding, the Court observed that the statutory provision at issue “does not codify” nor “otherwise specify that [the relevant] decisions are in the discretion of the Attorney General.” Id. at 834 (internal alteration and quotation marks omitted). In making this statement, the Court rejected the argument that the statutory language — “if the motion is granted” — sufficiently evinced Congress’s specification of discretionary authority. Id. at 834 n. 10. The Court explained that § 1252(a)(2)(B)(ii) “speaks of authority ‘specified’ — not merely assumed or contemplated — to be in the Attorney General’s discretion.” Id. The Court also considered that the plain and ordinary meaning of “ ‘specify’ ” means “ ‘to name or state explicitly or in detail.’ ” Id. (quoting Webster’s New Collegiate Dictionary 1116 (1974)). The Court cited Soltane v. U.S. Dep’t of Justice, 381 F.3d 143, 147 (3d Cir.2004) (Alito, J.) for the proposition that “marginally ambiguous statutory language, without more, is [not] adequate to specify that a particular action is within the Attorney General’s discretion for the purposes of § 1252(a)(2)(B)(ii).” Id. (internal quotation marks omitted). The Court therefore concluded that, in enacting § 1252(a)(2)(B)(ii), Congress only intended to bar a court’s review of decisions which Congress itself specified as being discretionary in the statute. See id. at 836-37.
Here, the decision that Jimenez-Galicia seeks to have reviewed is the BIA’s determination that he lacks “good moral character” — one of several statutory criteria that must be established just to be eligible for the Attorney General’s ultimate exercise of discretion in granting cancellation of removal. The cancellation of removal statute provides in relevant part that,
The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien ... (B) has been a person of good moral character during such period[J
8 U.S.C. § 1229b(b)(l) (2006). The INA defines good moral character separately at 8 U.S.C. § 1101(f). In addition to listing several categories of persons who are not of good moral character, the statutory definition provides that “[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.” Id. § 1101(f). It is under this clause that the BIA determined that Jimenez-Galicia was not a person of good moral character.
Here, because Congress did not specify in the statutory provisions governing cancellation of removal nor in the statutory definition of “good moral character” that the determination of one’s good moral character is within the Attorney General’s discretion, § 1252(a)(2)(B)(ii) does not strip this court of its jurisdiction to consider Jimenez-Galicia’s petition. There is simply no language that this statutory eligibility criterion has been “specified ... to be in the discretion of the Attorney General.” Id. § 1252(a)(2)(B)(ii).
The absence of Congress’s grant oí discretionary authority for the good moral character determination is all the more *1215 apparent when viewed in light of other provisions within the INA wherein Congress’s grant of discretionary authority is explicit. For example, when enacting 8 U.S.C. § 1182(h), the statutory provision which governs waiver of certain grounds of inadmissibility, Congress specifically gave the Attorney General not only the discretion to grant or deny the ultimate relief, but also explicitly granted the Attorney General the discretion to determine most of the underlying statutory eligibility requirements. Specifically as to the ultimate relief, Congress wrote that “[t]he Attorney General may, in his discretion, waive the application of [certain grounds of inadmissibility].” Id. § 1182(h) (emphasis added). And regarding several of the underlying statutory eligibility criteria, Congress decreed that those requirements must be “established to the satisfaction of the Attorney General.” See id. § 1182(h) (1) (A) (i)-(iii) (emphasis added). See also id. § 1182(h)(1)(B) (leaving it to the “the satisfaction of the Attorney General” whether “the alien’s denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien.”) (emphasis added).
In contrast to these provisions, in the enactment of 8 U.S.C. § 1229b, the statutory provisions governing cancellation of removal, Congress specifically gave discretion to the Attorney General only regarding the ultimate decision whether to grant or deny such relief. See id. § 1229b(a) (“The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States.”). Unlike the waiver of inadmissibility statute, none of the underlying eligibility requirements for cancellation of removal, including the special rules for battered spouses or persons eligible under NACARA, contain any language giving discretionary authority over those eligibility determinations to the Attorney General. Instead the statute merely lists the criteria for eligibility and/or provides that the individual must “establish,” id. § 1229b(b)(l)(D), or “demonstrate,” id. § 1229b(b)(2)(A), that he meets the criteria.[4]
If Congress had wanted the jurisdictional bar of § 1252(a)(2)(B) to extend to decisions that the courts, and not only Con *1216 gress, deem “discretionary,” Congress could easily have said so. See Kucana, 130 S.Ct. at 839 (“By defining the various jurisdictional bars by reference to other provisions in the INA itself, Congress ensured that it, and only it, would limit the federal courts’ jurisdiction.”). And if Congress had wanted to remove our jurisdiction to review any of the statutory eligibility criteria for cancellation of removal, it could have easily and explicitly specified which- of those determinations are within the Attorney General’s discretion as it did for the eligibility criteria for waivers of inadmissibility. It did not do either of those things. Insteád, as the Supreme Court has instructed time and time again regarding immigration legislation, “where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (internal quotation marks and alteration omitted); see also Nken v. Holder, 556 U.S. 418, 430, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (same); Kucana, 130 S.Ct. at 838 (same). Thus, where Congress has unequivocally demonstrated throughout various provisions of the INA that it knows how to designate that a particular decision is within the discretion of the Attorney General, and has also stated that those and only those discretionary decisions are not renewable, courts must adhere to Congress’s expressed intent. “Any lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) would be dispelled by a familiar principle of statutory construction: the presumption favoring judicial review of administrative action.” Kucana, 130 S.Ct. at 839. See also Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (“From the beginning [the Supreme Court’s] cases have established that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.”) (internal quotation marks omitted).
Because, as Kucana teaches, Congress did not remove our jurisdiction to review the good moral character requirement for cancellation of removal, which it could have done by specifically making that eligibility requirement a discretionary decision, we are, and should be, required to review the BIA’s decision that Jimenez-Galieia is not eligible for consideration for cancellation of removal.

. Although the actual decision-maker in Jimenez-Galicia’s case was the BIA, I generally refer to the authority of Attorney General when discussing the statutory provisions at issue in this case. While Congress has vested in the Attorney General the authority to decide legal questions arising under the immigration laws, see 8 U.S.C. § 1103(a), the Attorney General has delegated this function to the BIA to carry out in individual cases, see 8 C.F.R. § 1003.1(a)(1).

. See e.g., 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive the application of subparagraphs ... of this section.”); 8 U.S.C. § 1182(i)(l) ("The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) of this section.”); 8 U.S.C. § 1229b(b)(l) ("The Attorney General may cancel removal of ....”); 8 U.S.C. § 1229c(a)(l) ("The Attorney General may permit an alien voluntarily to depart the United States.”); 8 U.S.C. § 1255(a) ("The status *1213 of an alien ... may be adjusted by the Attorney General, in his discretion, and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence.”) (emphasis added in each parenthetical).

. The Supreme Court has also acknowledged this two-step decision-making process for immigrants in the context of obtaining habeas relief. See I.N.S. v. St. Cyr, 533 U.S. 289, 307-08, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (''Eligibility that was governed by specific statutory standards provided a right to a ruling on an applicant’s eligibility, even though the actual granting of relief was not a matter of right under any circumstances, but rather is in all cases a matter of grace.”) (internal quotation marks omitted).

. I am aware that our precedent in Gonzalez-Oropeza v. U.S. Att’y Gen., 321 F.3d 1331, 1332-33 holds that the "exceptional and extremely unusual hardship” eligibility requirement, § 1229b(b)(l)(D), for cancellation of removal is a discretionary decision not subject to review under § 1252(a)(2)(B). In light of the plain language of § 1252(a)(2)(B)(i) and the Court’s reasoning in Kucana, I believe our decision in Gonzalez-Oropeza is no longer supportable because there is nothing in the language of the cancellation of removal statute that indicates that Congress intended to leave the "exceptional and extremely unusual hardship” requirement to the Attorney General’s discretion. Gonzalez-Oropeza simply adopted circuit precedent from Najjar v. Ashcroft, 257 F.3d 1262, 1297-98 (11th Cir.2001), which held that a similar hardship requirement in the predecessor statute to cancellation of removal, known as suspension of deportation, was discretionary. We, however, failed to note in Gonzalez-Oropeza that the explicit language in the suspension of deportation statute provided that the determination about whether an individual would suffer a hardship was one left to the Attorney General's discretion. See Immigration and Naturalization Service v. Jong Ha Wang, 450 U.S. 139, 140, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (citing the statutory eligibility requirements for suspension of deportation to include "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship”) (emphasis added). Nor did we address the obvious and material change that Congress made in the cancellation of removal statute when it no longer included language leaving the “exceptional and extremely unusual hardship” requirement to the discretion of the Attorney General.