# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3873

_____

Baraka Jerry Dukuly,            *
                                *
         Petitioner,        *
                                *   Petition for Review
        v.                *   of an Order of the
                                *   Board of Immigration Appeals.
Mark Filip,[1]             *
Acting Attorney General,   *
                                *
         Respondent.      *

_____

Submitted: September 25, 2008
Filed: January 27, 2009

_____

Before WOLLMAN, SMITH, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Baraka Dukuly petitions for review of a Board of Immigration Appeals (BIA) decision upholding the Immigration Judge's (IJ) denial of an adjustment of status. We dismiss the petition for lack of jurisdiction.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Mark Filip is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

## I.

Dukuly is a male Liberian citizen who apparently entered the United States in 1996. In December 2003, Dukuly filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. In his asylum application, Dukuly claimed that he entered the United States on April 12, 2002, after suffering more than a decade of persecution in Liberia. Dukuly stated that his parents had been killed by Charles Taylor rebels when he was nine years old, and he claimed that the rebels had tortured and sexually abused him. He described being freed from the rebels by a kind elderly woman; wandering for several years through Ivory Coast refugee camps; and finally being placed by a friend on a ship headed for the United States. A government background check, however, revealed that Dukuly had been arrested in the United States as early as 1999, three years before he claimed to have arrived. Dukuly then sought to amend his asylum application, and later he withdrew it altogether.

On January 28, 2005, the Department of Homeland Security commenced removal proceedings against Dukuly. Dukuly conceded removability but sought adjustment of status (based upon his recent marriage to a naturalized American citizen) and waiver of inadmissability for filing a fabricated asylum application. During the removal hearings, Dukuly admitted that he had falsified information in his original asylum application, but claimed that his dishonesty was caused by his extreme reticence to disclose traumatic details about past abuse. He testified that after his parents were killed, he was befriended by a man named Hamidou Solko, who initially appeared to be kind but ultimately proved to be a pedophile who subjected Dukuly to six years of sexual abuse. Dukuly claimed that, shortly after he turned fourteen years old, Hamidou sent him to the United States. He stated that he entered the country by plane on September 19, 1996, clearing customs inspection at JFK Airport with a visitor visa procured by Hamidou. Government records appear to corroborate this entry date.

-2-

Several witnesses testified on Dukuly's behalf. Christian Flah testified that he had known Dukuly as a child and that he had heard that Dukuly's family was apprehended by Charles Taylor forces. Dukuly's wife testified that she had various disabilities and would be seriously harmed if her husband were deported. Finally, Charles Tracy, Dukuly's social worker, spoke about the nature of the abuse Dukuly had suffered. In Tracy's opinion, Dukuly's original dishonesty was attributable to abuse trauma and was consistent with deep psychological injury.

On June 26, 2007, the IJ granted the fraud waiver but denied Dukuly's request for adjustment of status, concluding that Dukuly did not merit a favorable exercise of discretion. The BIA upheld the decision, and Dukuly appeals.

II.

Adjustment of status is a discretionary decision committed to the Attorney General. See 8 U.S.C. § 1255. We lack jurisdiction to review the exercise of that discretion "unless the petition for review raises a constitutional claim or question of law." Hailemichael v. Gonzales, 454 F.3d 878, 886 (8th Cir. 2006); see also 8 U.S.C. § 1252(a)(2)(B)(i). A petitioner cannot evade this jurisdictional barrier by couching a factual argument in legal or constitutional terms; he must present a colorable legal or constitutional claim. See Higuit v. Gonzales, 433 F.3d 417, 420 (4th Cir. 2006) ("We are not free to convert every immigration case into a question of law, and thereby undermine Congress's decision to grant limited jurisdiction over matters committed in the first instance to the sound discretion of the Executive."). To establish a violation of due process rights, a petitioner must show fundamental unfairness or procedural irregularities that prejudiced his case. Salkeld v. Gonzales, 420 F.3d 804, 810 (8th Cir. 2005). Dukuly has not overcome this jurisdictional hurdle.

Several of Dukuly's arguments must be dismissed as disagreements with the IJ's factual determinations. Dukuly argues, for example, that the IJ's decision was arbitrary and unfair because it ignored important evidence that supported his claim: in particular, Tracy's expert testimony attributing Dukuly's fabrications to sexual abuse trauma, and government records that corroborated Dukuly's second purported entry date. The record, however, does not sustain Dukuly's assertion that the IJ ignored this evidence. Instead, it shows that the IJ considered the evidence but found it unpersuasive when weighed against other factors—including Dukuly's demonstrated propensity to lie about his past and the readiness of his social workers, family, and friends to believe and support a story that later proved false.[2] Compare Tun v. Gonzales, 485 F.3d 1014, 1026 (8th Cir. 2007) (holding that improper exclusion of expert testimony violated the petitioner's due process rights). We do not have jurisdiction to second-guess this determination.

Dukuly argues that two other aspects of the IJ's decision violated his due process rights. First, he asserts that the IJ refused his adjustment of status application to punish him for lying; second, he contends that the IJ's simultaneous grant of the fraud waiver and denial of adjustment of status was arbitrary and capricious. Neither of these arguments presents a colorable constitutional claim. The IJ's opinion weighed humanitarian considerations against the gravity of lying to the United States government. The IJ was also cognizant of the impact his decision would have on the immigration system, expressing his concern about promoting dishonesty in the asylum process. The IJ's sensitivity to these issues does not make the decision unduly punitive. Likewise, the IJ's decision to grant the fraud waiver—in deference to Dukuly's citizen wife and with the intent to enable Dukuly to someday return—was

_____

[1]The IJ also expressed skepticism of Dukuly's motivation for originally asserting a 2002 entry date. Dukuly's counsel insists that his only possible motivation was fear of disclosing Hamidou and the associated sexual abuse. But this contention ignores an obvious rebuttal: Dukuly's last arrest was in December 2001, and his original story allowed him to omit his criminal record.

-4-

not arbitrary or capricious. To the contrary, the IJ carefully explained that his ruling was an effort to temper justice with lenity, and we see no constitutional error in that decision.

## III.

Dukuly filed a motion for stay of removal before his period of voluntary departure expired. Although he did not also file a motion expressly seeking a stay of the voluntary departure period, we will deem our grant of the stay of removal as including a stay of the voluntary departure period. See Rife v. Ashcroft, 374 F.3d 606, 616 (8th Cir. 2004).

## IV.

The petition for review is dismissed.

_____