# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-3460, 08-1812

_____

| | | |
|---|---|---|
| Olivia Kipkemboi, et al., | * | |
| | * | |
| Petitioners, | * | |
| | * | |
| v. | * | Petitions of Review from the Board |
| | * | of Immigration Appeals. |
| Eric H. Holder, Jr., Attorney | * | |
| General of the United States,[1] | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 20, 2009
Filed:  November 23, 2009

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Olivia Chebet Kipkemboi and her husband, Wilfred Kipkemboi Sugut, appeal the final order of the Board of Immigration Appeals denying claims for asylum, withholding of removal, and relief under the Convention Against Torture.  Having jurisdiction under 8 U.S.C. § 1252, this court affirms the BIA.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

-1-

Kipkemboi and Sugut, Kenyan citizens, entered the United States in 1999 and have three children, all born here. In 2002, an immigration officer placed Kipkemboi and Sugut in removal proceedings because they had overstayed their visas. They requested asylum, withholding of removal, and protection under the Convention Against Torture, based on Kipkemboi's fears that she (and her daughter[2]) would be subjected to female genital mutilation, or female circumcision, if returned to Kenya. Kipkemboi and Sugut both oppose female genital mutilation.

Kipkemboi asserts that she narrowly escaped an attempted mutilation in Kenya at age 14, at least two of her five sisters in Kenya suffered genital mutilations, and Sugut's family adamantly wants her circumcised. Sugut testified that several of his family members came to Nairobi on multiple occasions to abduct and circumcise Kipkemboi, but left when they were unable to find her (the immigration judge did not credit his testimony on this point).

In 2004, the immigration judge denied Kipkemboi and Sugut's request for relief. The BIA dismissed their appeals in 2005 and denied a motion to reopen in 2006. In 2007, this Court remanded for further consideration, because it could not "determine that the immigration judge applied the correct legal standard in rejecting Kipkemboi's claim for asylum." **Kipkemboi v. Gonzales**, 211 Fed. Appx. 530, 532 (8th Cir. 2007) (unpublished) (per curiam). On remand, the BIA again denied relief. The BIA clarified that it did not require Kipkemboi and Sugut to meet a heightened legal standard in its initial review, finding that they had not established past persecution in Kenya, or a well-founded fear of future persecution if removed to Kenya. The BIA adopted the immigration judge's finding that Sugut's testimony about his family's attempts to abduct and circumcise Kipkemboi was not credible.

---

[2]Both in her written and oral argument, Kipkemboi states she is not making "a derivative claim," but only one for "her own suffering." *See* **Gumaneh v. Mukasey**, 535 F.3d 785, 789-90 (8th Cir. 2008).

Kipkemboi and Sugut again moved for reconsideration, and the BIA denied the motion.

## II.

Kipkemboi and Sugut's primary argument is that the immigration judge and BIA erred in denying their claim for asylum because they demonstrated both past persecution and a well-founded fear of future persecution. They also assert the administrative proceedings violated their due process rights. Finally, they contend that the BIA abused its discretion in denying their motion for reconsideration.

## A.

The attorney general has discretion to grant asylum to an alien unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." **8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)**. Persecution is an "extreme concept." *Sholla v. Gonzales*, 492 F.3d 946, 951 (8th Cir. 2007). Persecution includes "the threat of death, the threat or infliction of torture, and the threat or infliction of injury to one's person or one's liberty on account of a protected ground." *Id.*, *citing Regalado-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002).

Where, as here, the Board adopts the immigration judge's decision and adds reasoning of its own, this court reviews both decisions. *Setiadi v. Gonzales*, 437 F.3d 710, 713 (8th Cir. 2006). "The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." **8 U.S.C. § 1252(b)(4)(b)**. Thus, to reverse the administrative findings related to past and future persecution, this court must hold that the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Gitimu v. Holder*, 581 F.3d 769, 772 (8th Cir. 2009).

The record does not compel the conclusion that Kipkemboi and Sugut established past persecution. The immigration judge discredited Sugut's testimony about his family's attempts to abduct and circumcise his wife. As the BIA stated, the "adverse credibility finding with respect to [Sugut's] testimony that his family members have tried to abduct [Kipkemboi] . . . is supported by specific, cogent reasons." The immigration judge found it incredible that, although Sugut's family knew where he and Kipkemboi lived in Nairobi, they were never able to find her at home and would quickly leave due to the expense of staying in Nairobi. The immigration judge also observed that Sugut's family financially supported the couple. *See Onsongo v. Gonzales*, 457 F.3d 849, 853 (8th Cir. 2006) ("Although an IJ may not base an adverse credibility determination on speculation or conjecture, he may base an adverse credibility finding on the 'implausibility' of an alien's testimony, as long as the IJ gives specific and convincing reasons for disbelief.") (internal citations omitted).

With this testimony discredited, Kipkemboi's evidence of past persecution consists of her assertions that she narrowly escaped an attempted female genital mutilation at age 14 and that her husband's family shunned her. This evidence is not "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483-84. *See Sholla*, 492 F.3d at 951 ("Persecution is an extreme concept that excludes low-level intimidation and harassment.") (internal quotations omitted); *Setiadi*, 437 F.3d at 713 ("Past persecution does not normally include unfulfilled threats of physical injury.").

Because Kipkemboi did not establish past persecution, she is not entitled to a rebuttable presumption of a well-founded fear of future persecution. *See Reyes-Morales v. Gonzales*, 435 F.3d 937, 941 (8th Cir. 2006). "In order to prove a well-founded fear of future persecution, an alien must show both that he actually fears persecution and that a 'reasonable person in the alien's position would fear persecution if returned to the alien's native country.'" *Berte v. Ashcroft*, 396 F.3d 993, 996 (8th Cir. 2005), *quoting Regalado-Garcia*, 305 F.3d at 788.

-4-

The record does not compel the conclusion that Kipkemboi and Sugut established a well-founded fear of future persecution. The BIA found in its 2007 order that Sugut and Kipkemboi's shared opposition of female genital mutilation, along with their ability to live in a part of Kenya where female genital mutilation is less common, render her fears of future persecution objectively unreasonable. *See* **8 C.F.R. § 208.13(b)(2)(C)(ii)** (an asylum "applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality"); ***Mohamed v. Ashcroft***, 396 F.3d 999, 1006 (8th Cir. 2005) (if past persecution is not established, applicant must prove that her fear of future persecution exists countrywide unless it is unreasonable to expect her to relocate). Record evidence suggesting that female genital mutilation is generally limited to rural, less-educated populations, and is far less common in Nairobi, supports the BIA's conclusion.

Kipkemboi and Sugut argue that the BIA inappropriately required evidence of particularized persecution. An immigration judge shall not require an asylum applicant to produce evidence of individualized persecution if the "applicant establishes that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." **8 C.F.R. § 208.13(b)(2)(C)(iii)(A)**. But the immigration judge and BIA correctly found that Kipkemboi is not similarly situated to other Kenyan women who have suffered female genital mutilation. Kipkemboi and Sugut's "unified opposition to the practice, and their ability to live in a part of the country where female genital mutilation is much less common, distinguish their situation from that of their female relatives who have been mutilated."

Kipkemboi and Sugut assert that the BIA disregarded its own precedent, particularly *Kasinga*, 21 I. & N. Dec. 357 (BIA 1996). Kasinga, a 19-year-old citizen of Togo, was granted asylum due to her well-founded fear of female genital

mutilation. When she was 17, her aunt forced her into a polygamous marriage with an influential 45-year-old. He intended to force Kasinga to submit to female genital mutilation in accordance with tribal custom. The immigration judge and the BIA found that Kasinga would not likely escape mutilation by relocating within Togo. This case is distinguishable from *Kasinga*. Again, Kipkemboi's husband *opposes* female genital mutilation, and she and her husband are able to live in Nairobi where the practice is less widespread than in rural Kenya.

Kipkemboi and Sugut are not eligible for asylum because they failed to establish either past persecution or a well-founded fear of future persecution. Because they fail to meet the lesser burden of proving eligibility for asylum, they also fail to prove a right to withholding of removal. *See Suprun v. Gonzales*, 442 F.3d 1078, 1081 (8th Cir. 2006). Analysis under the Convention Against Torture is also unnecessary because there is no evidence that Kipkemboi might be tortured for reasons unrelated to her claims for asylum and withholding of removal. *See Alemu v. Gonzales*, 403 F.3d 572, 576 (8th Cir. 2005) ("[S]eparate analysis is required only when there is evidence that the alien might be tortured for reasons unrelated to her claims for asylum and withholding of removal . . . .").

B.

Kipkemboi and Sugut raise several due process issues last argued in their 2006 motion to reopen. They complain that the record in their case was insufficient for the BIA to properly review, that not all their issues were fully discussed in the administrative proceedings, that the immigration judge inappropriately interrupted their testimony with questions, and that the immigration judge questioned Sugut without appropriately probing his responses.

The Due Process Clause of the Fifth Amendment entitles Kipkemboi and Sugut to a fair hearing. *Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004); *Tun v. Gonzales*, 485 F.3d 1014, 1025 (8th Cir. 2007). To demonstrate that their deportation

hearing was fundamentally unfair in violation of the Due Process Clause, they must demonstrate both a fundamental procedural error and resulting prejudice. *United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995). "In this context, prejudice means a showing that the outcome of the proceeding may well have been different had there not been any procedural irregularities." *Tun*, 485 F.3d at 1026, *citing* **Torres-Sanchez**, 68 F.3d at 230.

Kipkemboi and Sugut point "to nothing that calls into doubt the fundamental fairness of the procedures employed." *See* **Tamenut v. Mukasey**, 521 F.3d 1000, 1005 (8th Cir. 2008). The BIA sufficiently addressed their complaints in its March 13, 2006 denial of the motion to reopen:

> [Kipkemboi and Sugut] assert that the hearing transcript was of such a poor quality that reopening is warranted. While the transcript contains several 'indiscernibles,' these deficiencies do not render the record insufficient for our review. Moreover, the respondents have failed to show that their claims for relief were not fully presented or understood.
>
> Third, the respondents assert these removal proceedings should be reopened due to the Immigration Judge's improper conduct. Specifically they assert that the Immigration Judge interfered in the proceedings by posing too many questions. However, the Immigration and Nationality Act specifically authorizes the Immigration Judge to "interrogate, examine and cross-examine the alien and any witnesses." In fact, the record reveals that the Immigration Judge was attentive and trying to develop the record.

(Internal citations omitted).

## C.

Finally, Kipkemboi and Sugut argue that the BIA erred in denying their motion to reconsider. This court reviews the BIA's denial of a motion to reconsider for abuse

of discretion. **Esenwah v. Ashcroft**, 378 F.3d 763, 765 (8th Cir. 2004). "The BIA abuses its discretion only when its decision 'is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim.'" **Id.**, *quoting* **Feleke v. INS**, 118 F.3d 594, 598 (8th Cir. 1997).

A motion to reconsider must specify "the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." **8 C.F.R. § 1003.2(b)**. The BIA must then "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." **Rodriguez-Rivera v. INS**, 993 F.2d 169, 170 (8th Cir. 1993) (per curiam).

Here, after reviewing their motion to reconsider, the BIA concluded that the "respondents' lengthy motion to reconsider raises essentially the same arguments presented in their previous filings, which the Board has fully considered." The BIA based its denial on the rational explanation that Kipkemboi and Sugut "failed to identify any legal or factual errors in the Board's decision." The BIA did not abuse its discretion in denying the motion to reconsider.

III.

The judgment of the BIA is affirmed.

_____