# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1006

_____

| | | |
|---|---|---|
| Sylvanus Biko Freeman, | * | |
| | * | |
| Petitioner, | * | |
| | * | On Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Eric H. Holder, Jr., United States | * | |
| Attorney General, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 21, 2009
Filed:  March 8, 2010

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Sylvanus Biko Freeman, a citizen of Liberia, petitions for review of the Board of Immigration Appeals' ("BIA") denial of his motion to reopen his removal proceedings.  We deny the petition in part and dismiss the remainder for lack of subject matter jurisdiction.

## I.    BACKGROUND

In 1997, Freeman entered the United States as a refugee.  In 2006, he pled guilty in Minnesota to Felony Financial Transaction Card Fraud, for which he

received a suspended sentence of one year and one day. Less than a year later, Freeman violated his parole, and his suspended sentence was, accordingly, revoked.

On November 14, 2007, the Department of Homeland Security ("DHS") initiated removal proceedings against Freeman and served him with a Notice to Appear. The Notice to Appear charged Freeman as removable and inadmissible for being (1) an alien convicted of committing an act which constitutes a crime involving moral turpitude, in violation of Immigration and Nationality Act ("INA") section 212(a)(2)(A)(i)(I); and (2) an alien who at the time of entry was not in possession of a valid entry document, in violation of INA section 212(a)(7)(A)(i)(I). As a result of these charges, DHS elected to detain Freeman.

While detained, Freeman had three master calendar hearings. Freeman received notices prior to each of these hearings. All of these notices, as well as the original Notice to Appear, contained warnings indicating that it was Freeman's responsibility to keep his address current by filing appropriate change of address paperwork and that his failure to appear at any hearing could result in immediate removal. Freeman remained in custody until January 14, 2008, at which point DHS released him on his own recognizance. This required him to participate in the Intensive Supervision Appearance Program ("ISAP") using electronic ankle bracelet monitoring. The record indicates that upon release from DHS custody, Freeman stated that his address would be 14382 Wintergreen Street, Andover, Minnesota. Accordingly, DHS sent a Form I-830 notice of alien's address to the immigration court, indicating that Freeman would be residing at that location.

On January 22, 2008, DHS sent notice to 14382 Wintergreen Street informing Freeman of his next hearing in May. Freeman failed to appear at that hearing. Accordingly, the Immigration Judge ("IJ") ordered him removed *in absentia*.

On January 9, 2008, prior to being ordered removed and while Freeman was still in custody, Freeman received a waiver of inadmissibility under INA section 209(c) (codified at 8 U.S.C. § 1159(c)), which waived the application of section 212(a)(2)(A)(i)(I)[1] as it relates to the offense of Felony Financial Transaction Fraud. Freeman did not present this waiver to the IJ prior to being ordered removed.

On June 13, 2008, Freeman filed a pro se motion to reopen his proceedings alleging that he never received notice of the May hearing. Specifically, Freeman contended that he was living at 3639 Girard Avenue in Minneapolis, Minnesota, not 14382 Wintergreen Street in Andover, Minnesota. The IJ denied the motion to reopen. On appeal, the BIA remanded the matter for an evidentiary hearing to determine whether Freeman had received proper notice of the hearing (i.e. whether he had filed a change of address form).

On remand, the IJ held two evidentiary hearings to develop the record. At the first of those hearings, Freeman told the IJ that ISAP did not give him an ankle bracelet. However, the record indicated that Freeman was in fact placed on the ISAP electronic monitoring program, wore an ankle bracelet, and was required to check in twice a week. And, the record indicated that Freeman violated the electronic monitoring and failed to show up in person at his appointments.

At the second hearing, Freeman moved to subpoena Anna Neal, a supervisory officer at ISAP, so that he might cross-examine her regarding the ISAP program and procedures. The IJ denied that subpoena, found Freeman not credible, and held that Freeman had not filed a change of address form. The IJ's adverse credibility holding was based on four specific findings: (1) Freeman was not forthcoming about his

---

[1]The waiver actually states that it waives INA section 212(a)(2)(A)(i)(II). Because we believe that this reference was a mere clerical error, we correct it for purposes of this discussion. Cf. Reyes-Morales v. Gonzales, 435 F.3d 937, 943 (8th Cir. 2006) (noting that clerical errors are purely ministerial and thus harmless).

participation in the ISAP ankle bracelet monitoring program; (2) Freeman missed several of his ISAP face-to-face meetings and violated the ankle bracelet monitoring program; (3) it was implausible to believe Freeman's assertion that he provided two different addresses on the same day; and (4) Freeman's supporting documentation was vague and unsubstantiated. Accordingly, the IJ denied the motion to reopen and the BIA affirmed. Freeman petitions us for review of this denial.

## II. DISCUSSION

### A. Jurisdiction

As a preliminary matter, we must determine whether we have jurisdiction to review the BIA's denial of Freeman's motion to reopen. "If an alien is a criminal alien under 8 U.S.C. § 1252(a)(2)(C), our jurisdiction to review his denial of a motion to reopen a final order of removal is limited to constitutional claims and questions of law." Hanan v. Mukasey, 519 F.3d 760, 763 (8th Cir. 2008) (citing 8 U.S.C. § 1252(a)(2)(C)-(D)).[2]

An alien is a "criminal alien" if he "is removable by reason of having committed a criminal offense covered in[, among other sections,] section 1182(a)(2)." 8 U.S.C. § 1252(a)(2)(C). As the Eleventh Circuit has noted, determining whether an alien is a "criminal alien" involves a three-step inquiry in which we ask whether the individual is "(1) an alien (2) who is removable (3) because he committed a criminal offense [covered in section 1182(a)(2)]." Balogun v. United States Att'y Gen., 304 F.3d 1303,

---

[2]The Supreme Court recently held that federal "courts retain jurisdiction to review" the BIA's decision to grant or deny a motion to reopen. Kucana v. Holder, 130 S. Ct. 827, 838 (2010). However, the Court expressly did "not reach the question whether review of a reopening denial would be precluded if the court would lack jurisdiction over the alien's underlying claim for relief." Id. at 839 n.17. Thus, Kucana does not alter our Hanan precedent.

1310 (11th Cir. 2002). Freeman admits that he is an alien and that he committed "a crime involving moral turpitude" pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I). However, he contends that he is not *removable* for that conviction because he received a 212(c) waiver of inadmissibility.[3] We assume Freeman *intended* to direct our attention to the 209(c) waiver, and we still find him removable.

A 209(c) waiver (codified at 8 U.S.C. § 1159(c)) does not make an alien immune from removal. Instead, it waives a ground of inadmissibility *for the purpose of seeking adjustment of status*. 8 U.S.C. § 1159(c) (providing that certain provisions of the INA "shall not be applicable to any alien *seeking adjustment of status* under this section, and the Secretary of Homeland Security or the Attorney General may waive [other provisions] with respect to *such an alien*" (emphasis added)). Since a 209(c) waiver only deals with waiving grounds for inadmissibility for the purpose of seeking adjustment of status, the waiver Freeman placed in the record has no bearing on whether he was removable for his conviction.[4]

Although Freeman did place the 209(c) waiver into the record, he has not, until now, asserted that the waiver makes him immune from removal for committing a crime of moral turpitude. It was Freeman's burden to prove that he was eligible for relief from removal. 8 U.S.C. § 1229a(c)(4)(A). He failed to meet this burden. Thus,

---

[3]In his brief Freeman argues that he received a 212(c) waiver of inadmissibility. However, this contention is erroneous for two reasons. First, there is no 212(c) waiver in the record. Second, INA section 212(c) was repealed in 1996. See INS v. St. Cyr, 533 U.S. 289, 297 (2001). Since Freeman pled guilty after 1996, he could not apply for a 212(c) waiver. Cf. id. at 326 (holding that "212(c) relief remains available for aliens" who pled guilty prior to 1996). Therefore, we do not address the effect of a 212(c) waiver on our jurisdiction.

[4]Of course, if he had been granted adjustment of status based upon receipt of the 209(c) waiver, that may have altered whether he was removable. However, since Freeman also failed to appear at his adjustment of status hearing, his application for adjustment of status was denied.

he is a criminal alien under 8 U.S.C. § 1252(a)(2)(C), and our review of his motion to reopen is limited solely to constitutional claims and questions of law.

## B. Legal Claims

To the extent Freeman raises any legal or constitutional claims, we review those issues de novo. Hanan, 519 F.3d at 763. But, given our limited jurisdiction, "[a] petitioner cannot evade [our] jurisdictional barrier by couching a factual argument in legal or constitutional terms; he must present a colorable legal or constitutional claim." Dukuly v. Filip, 553 F.3d 1147, 1149 (8th Cir. 2009).

Freeman asserts that he was denied due process during both the removal and reopening proceedings. The Fifth Amendment's Due Process Clause entitles Freeman to a fair hearing. Kipkemboi v. Holder, 587 F.3d 885, 890 (8th Cir. 2009); Tun v. Gonzales, 485 F.3d 1014, 1025 (8th Cir. 2007). To show that the proceedings were unfair in violation of due process, Freeman "must demonstrate both a fundamental procedural error and resulting prejudice." Kipkemboi, 587 F.3d at 890; see also Dukuly, 553 F.3d at 1149 ("To establish a violation of due process rights, a petitioner must show fundamental unfairness or procedural irregularities that prejudiced his case."). "In this context, prejudice means a showing that the outcome of the proceeding may well have been different had there not been any procedural irregularities." Tun, 485 F.3d at 1026.

Freeman asserts three instances in which he believes he was denied due process. First, he asserts that the immigration court violated his due process by not specifically warning him of the consequences of a failure to appear. In support of his assertion, Freeman directs our attention to 8 U.S.C. § 1229a(b)(5) & (7), which provides that the immigration court give an alien written and oral notice of the consequences of a failure to appear at a removal hearing. Contrary to Freeman's assertions, the immigration court complied with the strictures of 8 U.S.C. § 1229a(b)(5) & (7).

Specifically, Freeman received written and oral notice in the form of the November 14, 2007, Notice to Appear. The Notice to Appear provided written warning to Freeman both of the consequences of a failure to appear and his duty to update his address during removal proceedings. And, at the time he received the Notice to Appear, Freeman acknowledged that the process server read the warnings aloud. Further, Freeman received additional written notice of the consequences in the form of three separate notices of hearings, all of which were personally served on Freeman while he was in DHS custody. Thus, Freeman was provided with ample notice of the consequences of a failure to appear.

Second, Freeman contends that he did not receive proper notice of the May hearing. Pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii), if Freeman did not receive proper notice of his May hearing, then the IJ's *in absentia* order was in error. However, if the alien moves and fails to provide the immigration court with his new address, then the alien is not entitled to written notice. 8 U.S.C. § 1229a(b)(5)(B). Here, the record shows that DHS mailed Freeman notice of his May hearing to 14382 Wintergreen Street. And, upon out-processing Freeman, DHS properly filed a Form I-830 notifying the immigration court that Freeman provided DHS with 14382 Wintergreen Street as his address.[5] To the extent that Freeman now argues that he was living at 3639 Girard Avenue, it was his obligation to file a change of address form. 8 U.S.C. § 1229a(b)(5)(B). As noted above, Freeman was amply warned of this duty. Here, the IJ made a factual determination that Freeman did not file a change of address. We have no jurisdiction to review that factual determination. Pursuant to that determination, Freeman was afforded proper notice of the May hearing.

Third, Freeman contends that the IJ denied him due process by excluding the testimony of Anna Neal. "[D]ue process concerns dictate that immigration judges do

---

[5]Notably, DHS sent two Form I-830s to the immigration court. Both identified that Freeman reported his address to be 14382 Wintergreen Street.

not enjoy complete discretion in the admission and exclusion of evidence." <u>Tun</u>, 485 F.3d at 1026. "To comport with the requirements of due process . . . the immigration court cannot unfairly prevent a petitioner from presenting probative evidence and making a record." <u>Id.</u> Freeman asserts that Ms. Neal's testimony was necessary to develop the procedures used when processing someone out of DHS custody into the ISAP ankle bracelet program and whether the ankle bracelet monitoring equipment could be connected to a cell phone.

At the time Freeman sought to admit Ms. Neal's testimony, the only issue was whether Freeman had filed a change of address. The record establishes that Ms. Neal was not the individual who actually out-processed Freeman. Thus, her testimony as to what procedures were used was not probative. And, to the extent that cross-examining Ms. Neal on the salient points might have been probative, Freeman still must show that "the outcome of the proceeding may well have been different had" the IJ not excluded Ms. Neal's testimony. <u>Id.</u> Since the IJ rested her negative credibility finding in part on the ISAP records' indication that Freeman had violated ISAP's monitoring program, Freeman contends Ms. Neal's testimony might buffer or rebut this finding. However, even if Ms. Neal's testimony would rebut this finding, the IJ also found Freeman incredible on three other grounds. Thus, Ms. Neal's testimony would not have changed the outcome of Freeman's case, and he was not denied due process.[6]

---

[6]We recognize that Freeman raises two additional arguments in his petition. First, he challenges the IJ's credibility determination. Because adverse credibility determinations are a finding of fact, <u>Sow v. Mukasey</u>, 546 F.3d 953, 956 (8th Cir. 2008), we lack jurisdiction to review the IJ's credibility finding. Second, he asks that we remand this case for adjudication of his N-600 Application for Certificate of Citizenship. Since Freeman did not file the application until after he filed his motion to reopen, and since DHS has not yet made a determination on that application, the unadjudicated application is not grounds for us to remand this record. <u>Cf. Tebyasa v. Holder</u>, 593 F.3d 707, 709 (8th Cir. 2010) (noting that in the context of an I-130 application that "[t]he BIA will grant a motion to reopen [on the grounds of an I-130

## III.  CONCLUSION

Accordingly, we deny Freeman's petition for review regarding his constitutional and legal arguments that the IJ and the BIA denied him due process.  We dismiss the remainder of his petition for lack of subject matter jurisdiction.

———————————————————————

petition] only if an I-130 has been approved").