**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2010
Decided February 7, 2011

*Before*

RICHARD A. POSNER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 10-1886

| | |
|---|---|
| ROMEO MINGA, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A045-323-612 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Romeo Minga tried to convince an immigration judge to cancel his removal from the United States, but his lengthy criminal record proved too damaging to overcome, and the IJ denied his application. Certain that his previous lawyer is to blame for the adverse ruling, Minga argues in this petition for review that the Board of Immigration Appeals abused its discretion by refusing to remand his case to the IJ for reconsideration. But because Minga is removable for drug and gun convictions, we do not have subject-matter jurisdiction to review the Board's decision.

In July 1996, when Minga was 16 years old, he left Albania to start a new life in the United States as a "diversity immigrant." *See* 8 U.S.C. § 1153(c). Accompanied by his parents and two sisters, he settled in Fort Wayne, Indiana, and ultimately found work

installing flooring.  Throughout this time he also was assembling an extensive rap sheet. Between December 2000 and December 2008 he was arrested 14 times and convicted of 12 crimes, including possession of a controlled substance, carrying a handgun without a license, resisting law enforcement, battery, disorderly conduct, invasion of privacy, and operating a vehicle while intoxicated.  In April 2009 the Department of Homeland Security charged that his drug and gun convictions rendered him removable.  *See id.* § 1227(a)(2)(B)(i), (C).

Conceding that he is removable, Minga applied for cancellation and argued that he deserved a second chance.  *See* 8 U.S.C. § 1229b(a).  At a hearing he promised the IJ that he was a changed man with plans to return to school.  He explained that he wanted to open up his own flooring business; indeed, his priest reported that Minga had installed carpet for free in 15 apartments that the church makes available to newly arrived Albanian immigrants.  His entire family lives in the United States, Minga said, and if he is forced to build a new life in Albania, he would not even "know where to start."  Minga's parents described the monetary and emotional support he had given them over the years and lamented that removing their son would devastate the family.  In addition Minga's lawyer submitted evidence of the significant role that a son plays in Albania's patriarchal culture, as well as evidence that Albania is among the poorest countries in Europe and suffers a high rate of unemployment.

As for his lengthy criminal history, Minga and his family pinned the blame squarely on Katrina Adams, an American citizen whom Minga started dating in November 1999. The IJ described their four-year relationship as "stormy"; Minga chalked that up to Adams's scheming and duplicity.  He recounted their frequent fights and recalled that Adams liked to drink and "party" but was not interested in working.  His father claimed that Minga's legal woes began because Adams "taught him the wrong kind of behavior."  Minga's sister insisted that he took up drugs and alcohol only to relieve the frustration and stress that Adams wrought upon him.  And although Minga and Adams split sometime in 2003, the couple continued to clash over how to raise their two young children.

The IJ acknowledged the "particularly poignant" pleas of Minga's family but nevertheless exercised his discretion to deny Minga's application for cancellation of removal.  The IJ lamented that Minga's conduct had passed the point of giving him another chance; despite receiving notice "over and over again, at least 14 times here, that his conduct was in serious conflict with minimal social standards in the United States, he has failed to conform his conduct to the requirements of our criminal laws."  Minga's tumultuous relationship with Adams did not excuse his criminal behavior, the IJ reasoned, and it would be no reassurance even if she were the cause of his problems because she

would continue to play a significant part in his life as the mother of his children. The IJ could identify no evidence that Minga had learned from his past mistakes and thus lacked confidence that Minga would "be able to change his behavior" as he had promised. Despite the possible damage to Minga's family and the unfortunate circumstances Minga would encounter back in Albania, the IJ felt "constrained by what is best for this country" to order him removed.

Minga's lawyer filed a notice of appeal with the Board of Immigration Appeals but neglected to submit a timely brief. Instead, about a month after the deadline had passed, Minga fired that lawyer and submitted a pro se "motion to reopen" in light of counsel's allegedly deficient performance. In a memorandum accompanying the motion, Minga described evidence that he said former counsel ought to have submitted to the IJ. In particular he insisted that counsel should have submitted evidence that he paid his taxes and fulfilled his child-support obligations. Minga also contended that counsel should have bolstered his mother's testimony about her heart condition with medical records. And he faulted counsel because the record did not reveal why Minga had failed to complete an alcohol-abuse program he was required to attend while on probation in 2008.

Although the Board never explicitly said so, apparently it construed Minga's pro se motion to reopen as a motion to remand, consolidated the motion with the pending appeal, and then resolved both matters in a single order. *See* 8 C.F.R. § 1003.2(c)(4). The Board dismissed Minga's appeal after finding no clear error in the IJ's factual findings and, as an exercise of its discretion, agreeing with the IJ that Minga did not merit cancellation of removal. As to the motion to remand, the Board noted that Minga had not filed a complaint about counsel's performance with the appropriate disciplinary authorities, as required by *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). But even if Minga had complied with *Lozada*, the Board added, his motion to remand would still be denied because he did not present any evidence that counsel's alleged deficiencies could have affected the outcome of his hearing.

Because the Board issued its own written analysis of Minga's case, we review only the Board's order. *See Kone v. Holder*, 620 F.3d 760, 763 (7th Cir. 2010). Minga's petition presents for review two distinct decisions by the Board. In its final order of removal, the Board both rejected Minga's application for cancellation of removal and denied his pro se motion to reopen, which it deemed a motion to remand. Minga, though, does not contest the Board's rejection of his application for cancellation of removal, and in any event that determination is beyond the scope of our jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(B)(i).

So is the Board's denial of Minga's motion to remand.  As the government points out, 8 U.S.C. § 1252(a)(2)(C) strips this court of jurisdiction to review Minga's final order of removal because he is removable for committing drug and gun offenses covered by 8 U.S.C. § 1227(a)(2)(B)(i) and (C).  The courts of appeals uniformly have interpreted § 1252(a)(2)(C) to forbid review of any motion to set aside an order of removal like the one entered against Minga.  *See Freeman v. Holder*, 596 F.3d 952, 956 (8th Cir. 2010); *Ngaeth v. Mukasey*, 545 F.3d 796, 800 (9th Cir. 2008); *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 696 (7th Cir. 2008); *Khan v. Gonzales*, 495 F.3d 31, 34 (2d Cir. 2007); *Cruz v. Att'y Gen.*, 452 F.3d 240, 246-47 (3d Cir. 2006); *Boakai v. Gonzales*, 447 F.3d 1, 4 (1st Cir. 2006); *Patel v. Att'y Gen.*, 334 F.3d 1259, 1262 (11th Cir. 2003).  *See also Kucana v. Holder*, 130 S. Ct. 827, 839 n.17 (2010) (declining to reach question whether review of order denying motion to reopen would be precluded if court lacked jurisdiction over underlying claim for relief).  And Minga does not advance a legal or constitutional question, the only exception to the jurisdictional bar.  *See* 8 U.S.C. § 1252(a)(2)(D).  The Board's ultimate conclusion that he was not prejudiced by counsel's alleged ineffectiveness is a question of fact, not of law.  *See Jezierski v. Mukasey*, 543 F.3d 886, 890 (7th Cir. 2008).  *See also Patel v. Gonzales*, 496 F.3d 829, 831 (7th Cir. 2007) (explaining that Board's ineffectiveness determination is discretionary); *Stroe v. INS*, 256 F.3d 498, 501 (7th Cir. 2001) (same).  Nor is there any constitutional right to effective assistance of counsel in an immigration proceeding.  *See Ghaffar v. Mukasey*, 551 F.3d 651, 656 (7th Cir. 2008); *Rafiyev v. Mukasey*, 536 F.3d 853, 861 (8th Cir. 2008); *Afanwi v. Mukasey*, 526 F.3d 788, 798 (4th Cir. 2008), *vacated on other grounds*, 130 S. Ct. 350 (2009); *Patel*, 496 F.3d at 831; *Magala v. Gonzales*, 434 F.3d 523, 525-26 (7th Cir. 2005); *Stroe*, 256 F.3d at 500-01.  In any event Minga grounds his argument in the Board's *Lozada* rule that authorizes relief, at the Board's discretion, to aliens who have suffered ineffective assistance of counsel; he has not even attempted to develop an argument that his lawyer's alleged incompetence was so egregious that he was deprived a reasonable opportunity to present his case in violation of the Due Process Clause.  *See Kay v. Ashcroft*, 387 F.3d 664, 676 (7th Cir. 2004).

DISMISSED.