**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-3443, 13-1035, & 13-1552
_____

EMMANUEL EHIKHUEMHEN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-445-607)
Immigration Judge:  Honorable Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 21, 2013

Before:  FISHER, GARTH and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 23, 2013)
_____

OPINION
_____

PER CURIAM

　　Emmanuel Ehikhuemhen petitions for review of three separate orders issued by

the Board of Immigration Appeals (BIA).  The first order denied Ehikhuemhen's

applications for asylum, withholding of removal, and protection under the United Nations' Convention Against Torture (CAT); the second denied Ehikhuemhen's motion to reopen; and the third denied Ehikhuemhen's motion for reconsideration. For the following reasons, we will dismiss the petitions in part and deny them in part.

## I. Introduction and Background

Ehikhuemhen, a Nigerian citizen, hails originally from the Niger Delta region of the country. His family, who are members of the Edo tribe, adhered to traditional African religions. But some time after he relocated to the central capital city of Abuja, Ehikhuemhen met a congregant of the Living Faith Church; inspired, he converted to evangelical Christianity, began to proselytize, and soon convinced a Muslim fellow resident of Abuja to join him in the faith.

According to Ehikhuemhen, his Christian religious activity landed him in the crosshairs of local militant Islamic groups, and specifically a radical group called the Boko Haram,[1] from whose ranks he had won his convert. In early 2010, a local Imam sent members of the Boko Haram to storm a prayer meeting in Abuja. Beaten and severely injured, Ehikhuemhen suffered internal bleeding and was hospitalized for a month. His fellow congregants sought help from the police, who allegedly refused to

---

[1] The Boko Haram "promotes a version of Islam which makes it 'haram,' or forbidden, for Muslims to take part in any political or social activity associated with Western society. . . . Its political goal was to create an Islamic state . . . ." Administrative Record 432–33.

2

render assistance because, as Muslims, "they sided with [the] attackers." Later, Boko Haram groups burned down the market in Abuja where Ehikhuemhen's shop was located "because it was on the way to the Living Faith Church." After these attacks, and realizing that the Boko Haram could readily identify him, Ehikhuemhen decided to flee to the United States. Administrative Record (A.R.)[2] 365, 474–75.

Having been paroled into the United States for the purpose of criminal prosecution,[3] Ehikhuemhen was served in September 2011 with a Notice to Appear. He was alleged to be inadmissible under several subsections of 8 U.S.C. § 1182, including the provision dealing with crimes involving moral turpitude. See 8 U.S.C. § 1182(a)(2)(A)(i)(I); A.R. 519–20. Although at first Ehikhuemhen contested certain of the charges, see A.R. 332–33, he eventually conceded both the individual factual allegations and his overall inadmissibility, see A.R. 338.

Ehikhuemhen then filed a defensive application for asylum, withholding of removal, and CAT protection, based on the incidents recounted above and his continuing fear of persecution. Among the materials submitted in support of Ehikhuemhen's application were: a letter from his brother, castigating Ehikhuemhen for his conversion

---

[2] All citations to the Administrative Record refer to the record compiled in C.A. No. 13-1552, which contains materials pertaining to all three petitions for review.

[3] Ehikhuemhen pleaded guilty to one count of visa fraud (18 U.S.C. § 1546(a)), and received a three-month sentence. See Judgment 1–2, ECF No. 9, E.D.N.Y. Crim. No. 1:11-cr-00542.

while obliquely referencing his beating, A.R. 449; a baptismal certificate from the Living Faith Church in Abuja, A.R. 450; and an affidavit from Ehikhuemhen's brother-in-law, A.R. 439–40. The affidavit purported to explain the absence of certain documents from Ehikhuemhen's evidentiary submissions, despite the best efforts of the brother-in-law and his family to locate them. For example, no police report on the 2010 beating was available because "the police station was burn[ed] down by the Boko Haram in 2011." A.R. 439.

At his merits hearing before the Immigration Judge (IJ), Ehikhuemhen testified in support of his applications for relief. In describing the 2010 assault by Boko Haram members, Ehikhuemhen explained that he was "bitterly injured" and hospitalized for a month. A.R. 366. However, he struggled on cross examination to articulate the precise extent of his injuries, expressing confusion over the meaning of "surgery" while testifying that he was treated for broken bones in his leg and back. See A.R. 384. Ehikhuemhen pointed to his light skin-tone as something that would lead to his easy identification and would, presumably, make relocating difficult. A.R. 369–70. For its part, the Government emphasized Ehikhuemhen's ability to relocate throughout the proceedings. See, e.g., A.R. 380 (discussing the distance between Abuja and Lagos), 389–90, 395 (closing statement); see also 391 (discussing Nigeria's "very large Christian community").

The IJ ultimately denied Ehikhuemhen's application for relief. Despite finding

4

him to be credible, <u>see</u> A.R. 289, the IJ determined that Ehikhuemhen had failed to corroborate certain essential aspects of his story, such as the extent of his injuries after the first attack. A.R. 290. The IJ characterized the market attack as the lamentable product of "general violence." A.R. 292; <u>see also</u> A.R. 293 ("Unfortunately, Respondent appears to be one of many Nigerian store owners whose lives were negatively impacted by persistent religious hostility."). She separately decided that Ehikhuemhen had not satisfied his burden of showing a well-founded fear of future persecution, in part because he "failed to establish that his fear of persecution is country-wide." A.R. 294. In fact, relying upon the 2010 State Department International Religious Freedom Report, the IJ explicitly found that "there are areas within Nigeria where [Ehikhuemhen] can relocate to and live without fear of future persecution." A.R. 294.

Ehikhuemhen timely sought review from the BIA, but to no success. The BIA affirmed, holding that the IJ "complied with the Third Circuit's corroboration requirements" and properly denied relief after "consider[ing] the totality of the evidence." A.R. 249–50. Without corroboration, Ehikhuemhen had not met his burden of proof of showing either past persecution or a well-founded fear of future persecution. A.R. 250. The BIA also affirmed the IJ's relocation finding. A.R. 251.

Shortly thereafter, Ehikhuemhen obtained two new pieces of evidence. The first was a report on the Boko Haram issued by the Human Rights Watch that purportedly showed the group's expanding geographical influence. The second was "a letter . . . from

5

the hospital where [Ehikhuemhen] was treated after his attack." A.R. 137–38. Ehikhuemhen thus filed a timely motion to reopen in the BIA.

The BIA again denied relief. It decided (inter alia) that the hospital letter was not previously unavailable and that the Human Rights Watch report was based on incidents predating Ehikhuemhen's final hearing. A.R. 107. Moreover, Ehikhuemhen had failed to show that the report would be likely to affect the outcome of his proceedings. A.R. 107. For example, a kidnapping incident, although involving a man from Southeast Nigeria, likely occurred in the Northeast region of the country. A.R. 108 (citing A.R. 171, which references a "compound in Maiduguri," a Northeastern city).

After gathering yet more evidence in support of his application, Ehikhuemhen filed a motion for reconsideration of the BIA's second order.[4] See A.R. 17. The keystone of the new set of documents was a Jamestown Foundation report that "included specific evidence that the persecution of Christians has recently extended into the South of Nigeria." A.R. 17. Several statements from one Bala Elbir were also included, detailing Mr. Elbir's attempts to earlier obtain the medical document that had been supplied with the motion to reopen. See, e.g., A.R. 95.

The BIA again denied relief. Construing the motion as both a motion to

---

[4] The procedural history of this submission is a bit more tangled than our summary would suggest, but as the BIA accepted all of Ehikhuemhen's filings at face value, we need not worry about the propriety or stylings of his multiple filings, despite their apparent noncompliance with 8 C.F.R. § 1003.2(c)(2) and the relevant statutory equivalents.

6

reconsider and a motion to reopen, the BIA identified "no legal authority" or previously unavailable evidence that would suggest error in its previous dispositions. A.R. 2. "Nor d[id] the supplemental evidence warrant reopening." A.R. 2.

We consolidated Ehikhuemhen's three petitions for review by order of January 7, 2013. The case is fully briefed and is ripe for disposition.

## II. Jurisdiction[5] and Standard of Review

We may ordinarily exercise jurisdiction over final orders of removal—so long as petitions for review are timely filed—and will generally review the BIA's decision except to the extent that the BIA deferred to or adopted the IJ's decision. See 8 U.S.C. § 1252(b)(1); Calla-Collado v. Att'y Gen., 663 F.3d 680, 683 (3d Cir. 2011) (per curiam). Ehikhuemhen filed timely petitions from each separate order, as he was required to do. See Castro v. Att'y Gen., 671 F.3d 356, 364 (3d Cir. 2012). However, that is not the end

---

[5] In our April 3, 2013 order denying Ehikhuemhen's second motion to stay his removal, we directed the parties to discuss "the basis and extent of our jurisdiction over this matter," as we had detected a possible jurisdictional limitation (discussed further above the margin) that neither party acknowledged in its motions-stage submissions. The petitioner has complied, albeit in a somewhat cursory fashion. The Government, by contrast, has completely failed to discuss the jurisdictional problem we highlighted in our order, and has not otherwise meaningfully responded to the jurisdictional contentions raised in the petitioner's brief. See also Pet'r's Reply Br. 2 n.2 (observing that the Government has failed to respond to jurisdictional issues). We are nevertheless required to address the scope of our jurisdiction even without assistance or advocacy from the Government. See Pennsylvania v. Flaherty, 983 F.2d 1267, 1275 (3d Cir. 1993); see also In re Caterbone, 640 F.3d 108, 111 (3d Cir. 2011) (explaining that subject-matter jurisdiction cannot be waived or forfeited).

of our jurisdictional inquiry, because an additional statutory provision affects the breadth of our jurisdiction in this case.

Under 8 U.S.C. § 1252(a)(2)(C), we lack "jurisdiction to review any final order of removal against an alien who is removable[, inter alia,] by reason of having committed a criminal offense covered in [8 U.S.C. §] 1182(a)(2)." Ehikhuemhen conceded that he was inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), and therefore § 1252(a)(2)(C) plainly applies. See Alaka v. Att'y Gen., 456 F.3d 88, 102 (3d Cir. 2006); see also Freeman v. Holder, 596 F.3d 952, 956 (8th Cir. 2010). As a result, we cannot exercise jurisdiction over factual or discretionary determinations made by the agency. See Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006). However, 8 U.S.C. § 1252(a)(2)(D) restores our jurisdiction to review "colorable" constitutional claims or questions of law. Pareja v. Att'y Gen., 615 F.3d 180, 186–87 (3d Cir. 2010). "We review legal determinations de novo, subject to [Chevron] principles of deference . . . ." Hanif v. Att'y Gen., 694 F.3d 479, 483 (3d Cir. 2012) (citation omitted).

The criminal-alien restriction on, and partial restoration of, our jurisdiction applies with equal force to the review of motions to reopen and to reconsider. Cruz v. Att'y Gen., 452 F.3d 240, 246–47 (3d Cir. 2006); accord Hanan v. Mukasey, 519 F.3d 760, 763 (8th Cir. 2008); Durant v. INS, 393 F.3d 113, 115 (2d Cir. 2004). Thus, we may review a denial of a motion to reopen in this context only if the agency's decision was contrary to law or rose to the level of a denial of due process. See, e.g., Alzainati v. Holder, 568

8

F.3d 844, 850 (10th Cir. 2009). Both kinds of motions are otherwise reviewed under the same deferential abuse of discretion standard. Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005).

## III. Discussion

Having established our standard of review and the limitations on our jurisdiction, we will address each of the claims raised in Ehikhuemhen's opening brief.

**A) Agency Misapplication of Corroboration Requirements**

In his sole challenge to the BIA's original merits decision, Ehikhuemhen maintains that the agency erred by departing from the corroboration process of Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001), which was codified at 8 U.S.C. § 1158(b)(1)(B) by the REAL ID Act. See Dong v. Att'y Gen., 638 F.3d 223, 229 n.3 (3d Cir. 2011). To the extent that this is a reviewable question of law, see Alvarado-Carillo v. INS, 251 F.3d 44, 49 (2d Cir. 2001), we need not reach it, because resolving the matter would not change the outcome of the case.

The IJ explicitly found that Ehikhuemhen could relocate within Nigeria to escape persecution. While the IJ did not explicitly discuss the burden-shifting framework of a relocation finding, the record supports that the Government showed, by a preponderance of the evidence, that relocation was both possible and reasonable. See 8 C.F.R. § 1208.13(b)(1)(i)–(ii), (b)(2)(ii), (b)(3)(i)–(ii). Ehikhuemhen obviously disagrees, and

9

has contested the matter since. But the BIA upheld the IJ's relocation determination on appeal and thereafter—it has survived undiminished. Because a relocation finding is a factual question, it is unreviewable when 8 U.S.C. § 1252(a)(2)(C) applies. Cf. Gambashidze v. Ashcroft, 381 F.3d 187, 191 (3d Cir. 2004); see also Perez-Ramirez v. Holder, 648 F.3d 953, 958 (9th Cir. 2011); Arboleda v. Att'y Gen., 434 F.3d 1220, 1224 (11th Cir. 2006) (per curiam).[6] Even if the agency erred in its corroboration analysis, and even if Ehikhuemhen were then found to have suffered past persecution, the relocation finding would stand, preventing him from winning asylum. Thus, relief cannot be granted on this claim.

**B) The BIA's Denial of Ehikhuemhen's Motions with Respect to his Medical Information**

Ehikhuemhen argues that the BIA erred when it determined that reopening was not warranted because his medical records "were reasonably available before [his] hearing." See Pet'r's Br. 24–25; A.R. 2, 107. He maintains that "[t]he BIA's finding regarding the availability of the records is not supported by substantial evidence" because "any reasonable adjudicator would be compelled to conclude" that Mr. Elbir could not have obtained the records any sooner than he did.

---

[6] Ehikhuemhen does not, in his opening brief, challenge the legal test used to determine whether relocation was possible or reasonable. See Gambashidze, 381 F.3d at 192; see also Dwumaah v. Att'y Gen., 609 F.3d 586, 589 n.3 (3d Cir. 2010) (deeming waived those matters not raised in an opening brief). Nor is it clear that he exhausted any such claim before the agency. See A.R. 261 (contesting, in BIA brief, the factual aspects of IJ's relocation determination); 8 U.S.C. § 1252(d)(1).

Ehikhuemhen's argument refers to 8 C.F.R. § 1003.2(c)(1), which states that "[a] motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." While we do not appear to have addressed, in a precedential opinion, whether the prior unavailability of evidence is a factual or legal determination, the BIA here simply determined, based on the totality of Ehikhuemhen's submissions, that the letter (or its equivalent) could have been discovered sooner. We think that this is a factual determination falling beyond the boundaries of our present jurisdiction—indeed, Ehikhuemhen seems to implicitly concede this by urging a substantial-evidence standard of review, which is reserved for issues of fact. See, e.g., Khan v. Att'y Gen., 691 F.3d 488, 496 (3d Cir. 2012). Accordingly, we hold that we lack jurisdiction to address this claim.[7]

### C) The BIA's Consideration of the Human Rights Watch Report

Next, Ehikhuemhen argues that the BIA "abused its discretion when it denied Mr. Ehikhuemhen's motion to reopen his removal proceedings to permit consideration of the

---

[7] We note parenthetically that the medical evidence, which is limited to a single letter from a doctor at the University of Benin Teaching Hospital, is not quite as persuasive as Ehikhuemhen appears to believe. In the letter, Dr. Akhigbe refers to neurological and abdominal symptoms, such as a subarachnoid hemorrhage, and treatment directed at those symptoms. See A.R. 220; Stedman's Medical Dictionary 127 (28th ed. 2006). But at his merits hearing, Ehikhuemhen testified that he was treated for leg and back injuries. See A.R. 384. We question whether this letter would have addressed the IJ's concerns

11

HRW Report." Pet'r's Br. 25. The BIA initially denied reopening in part because the incidents underlying the report were previously discoverable. See A.R. 107. The BIA reaffirmed this aspect of its decision when denying Ehikhuemhen's motion for reconsideration. See A.R. 2. In so doing, it pointed out that the burden of proof with regard to prior unavailability rested on Ehikhuemhen's shoulders. See Pllumi v. Att'y Gen., 642 F.3d 155, 161 (3d Cir. 2011). Because the BIA's decision rested in part on the availability of the evidence—a factor that sufficiently supports the outcome reached by the agency—we lack jurisdiction to address this claim.

**D) The BIA's Consideration of the Jamestown Report**

Ehikhuemhen alleges that the BIA erred when it determined that the Jamestown Report was not material. Pet'r's Br. 26–28. In other contexts, we have emphasized that materiality is a mixed question of fact and law. See, e.g., Simmons v. Beard, 590 F.3d 223, 233 n.5 (3d Cir. 2009). "A mixed question of fact and law is one that requires application of a legal standard to a particular set of circumstances." Huang v. Att'y Gen., 620 F.3d 372, 384 (3d Cir. 2010) (citation omitted). These mixed questions have been held to be reviewable under 8 U.S.C. § 1252(a)(2)(D). See Barrios v. Holder, 581 F.3d 849, 857 (9th Cir. 2009) (per curiam) (citation omitted); cf. Rosario v. Holder, 627 F.3d 58, 62 (2d Cir. 2010).

To the extent that we may review the BIA's determination, however, we cannot

_____

regarding the extent of Ehikhuemhen's injuries, as it is inconsistent with his testimony, is

12

conclude that it represented an abuse of discretion. The dispute here is one of interpretation, as well as of the extent of risk. We cannot say that the BIA's decision here is either flawed by an error of law, uses an incorrect legal standard, or is so without rational justification as to be legally erroneous. See Rosario, 627 F.3d at 62. Accordingly, we cannot grant relief on this claim.

### E) Establishing a Prima Facie Case for Asylum

Ehikhuemhen argues that he has established a prima facie case for asylum via his supplemental submissions, when that evidence is considered in tandem with documentation already in the record. See INS v. Abudu, 485 U.S. 94, 104 (1988); Smith v. Holder, 627 F.3d 427, 438 (1st Cir. 2010). But neither of the BIA orders in question referred to whether Ehikhuemhen made a prima facie case for asylum; and, even if they had done so, we would be unable to review those outcomes. See Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007) ("[W]hen [the BIA] denies a motion to reopen on the ground that the applicant has failed to make a prima facie showing, we . . . review that determination to ensure that it is supported by substantial evidence and is not an abuse of discretion."); see also Larngar v. Holder, 562 F.3d 71, 79 (1st Cir. 2009) (noting that "a number of courts" review these cases for substantial evidence, thereby "suggest[ing] that we lack jurisdiction in this context," but ultimately declining to answer the question).

### IV. Conclusion

---

not a formal medical record, and is not a contemporaneous report.

Having examined the claims raised in Ehikhuemhen's brief, we conclude that we partly lack jurisdiction to review them, and must otherwise deny the remainder as being without merit. We will therefore dismiss these petitions for review in part and deny them in part.